Filed 6/18/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| ALFREDO GOMEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | S179176 |
| v. | ) | |
| | ) | Ct.App. 3 C060710 |
| THE SUPERIOR COURT OF LASSEN COUNTY, | ) ) | |
| | ) | Lassen County |
| Respondent; | ) | Super. Ct. No. 47543 |
| | ) | |
| TOM FELKER, as Warden, etc., | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| _____ | ) | |
| | ) | |
| MANUEL JUAREZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | S179176 |
| v. | ) | |
| | ) | Ct.App. 3 C060773 |
| THE SUPERIOR COURT OF LASSEN COUNTY, | ) ) | |
| | ) | Lassen County |
| Respondent; | ) | Super. Ct. No. CHW2530 |
| | ) | |
| THE PEOPLE, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| _____ | ) | |

We granted review to decide whether a court commissioner has the authority to summarily deny a petition for writ of mandamus or habeas corpus under Code of Civil Procedure section 259, subdivision (a), which authorizes

1

commissioners to "[h]ear and determine ex parte motions for orders and alternative writs and writs of habeas corpus."[1] We conclude that section 259, subdivision (a) does grant this authority to commissioners and that, at least when the petition seeks to enforce a prisoner's rights while in confinement — but does not seek to collaterally attack the criminal conviction that provides the basis for that confinement — the summary denial of a writ petition constitutes a "subordinate judicial dut[y]" properly undertaken by a commissioner within the meaning of article VI, section 22 of the California Constitution.

## FACTS

Petitioner Gomez, an inmate at High Desert State Prison in Susanville, filed a petition for writ of mandate in the Lassen Superior Court, seeking to require the prison to process four administrative appeals of grievances that he had filed. These administrative appeals addressed his grievances regarding the prison policies for the certification of in forma pauperis forms; the prison's alleged failure to provide postage for mailing legal documents; the prison's alleged failure to respond to a request for public records; and the prison's refusal to process administrative appeals in the first two matters. In his petition in the superior court, Gomez complained that the prison's failure to process his appeals prevented him from exhausting administrative remedies, a prerequisite to filing an action in federal court. (See *Woodford v. Ngo* (2006) 548 U.S. 81 [prisoner must properly exhaust administrative review processes before suing prison officials in a federal civil rights action under 42 U.S.C. § 1983].) Lassen Superior Court Commissioner Dawson Arnold signed an order denying the petition. Gomez objected to the order

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

2

on the ground that he had not consented to the commissioner's jurisdiction. Commissioner Arnold entered a minute order striking the objection, citing section 259, subdivision (a).

Petitioner Juarez, also a prisoner at High Desert State Prison, similarly filed a petition for writ of mandate in the Lassen Superior Court seeking a writ directing prison authorities to process three administrative appeals of grievances that he had filed. These three administrative appeals addressed his grievances seeking damages resulting from an incident in which Juarez had been forced to "prone-out" for over five hours without being allowed to use the restroom; seeking return of a folder containing personal art work, addresses, and photographs, which had been confiscated by a prison staff member; and complaining about a staff member's alleged failure to respond to Juarez's complaint about the seizure of the folder. Like Gomez, Juarez alleged that the failure of prison authorities to process his appeals regarding these grievances prevented him from exhausting his administrative remedies, a prerequisite to seeking relief in federal court. Commissioner Arnold issued an order treating the petition for writ of mandate as a petition for writ of habeas corpus and denied it, concluding, "The petition does not merit relief in habeas corpus and is denied."

Gomez filed a petition for writ of mandate in the Court of Appeal, claiming that the commissioner lacked jurisdiction to deny his petition in the superior court. Juarez filed a petition for writ of habeas corpus in the Court of Appeal on the same grounds, which the Court of Appeal treated as a petition for writ of mandate. The Court of Appeal issued an alternative writ in each case and ordered that the cases be consolidated.

In response to the alternative writ, the Attorney General filed a return on behalf of real parties in interest, the warden and other officials of High Desert State Prison, arguing that commissioners do not have the authority to enter final

3

orders in writ proceedings unless both parties consent to the commissioner acting as a temporary judge. However, the Superior Court of Lassen County also filed a return, asserting that section 259, subdivision (a) authorizes commissioners to deny petitions for alternative writs and writs of habeas corpus, and that the statute is constitutional.

The Court of Appeal denied both petitions in a published decision, concluding that a commissioner is granted authority to deny habeas corpus petitions and petitions for writs of mandate by section 259, subdivision (a), which, as noted, authorizes commissioners to "[h]ear and determine ex parte motions for orders and alternative writs and writs of habeas corpus." The Court of Appeal concluded that a commissioner's authority to "determine ex parte motions for . . . alternative writs and writs of habeas corpus" includes the authority to summarily deny writ petitions.

The Court of Appeal further concluded that section 259, subdivision (a) is a lawful exercise of the Legislature's constitutional authority to "provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." (Cal. Const., art. VI, § 22.) The appellate court reasoned that the relevant constitutional language was adopted as part of the 1966 revision of the California Constitution and was intended to include all the powers that commissioners had and were exercising at that time. (*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 360-366 (*Rooney*).) Because the language of section 259, subdivision (a) was in existence at the time of the 1966 constitutional revision, the Court of Appeal concluded that the power to "hear and determine ex parte motions for . . . alternative writs and writs of habeas corpus" necessarily constituted a subordinate judicial duty within the meaning of the California Constitution. Finally, the Court of Appeal rejected petitioners' argument that the denial of a petition for a writ of habeas corpus is too important

4

to be performed by a subordinate judicial officer, concluding that "the initial review of an application for a writ of habeas corpus is carefully constrained."

We granted review. In this court, the Attorney General on behalf of real parties in interest, initially took a neutral position. We requested supplemental briefing from the parties and invited the Lassen Superior Court, which had participated in the proceedings in the Court of Appeal, to file a brief. We also invited the California Court Commissioners Association to file an amicus curiae brief. In response to several questions posed by this court, the Attorney General argued in a supplemental brief that commissioners are authorized to summarily deny writ petitions. The superior court took the same position. At oral argument, the Attorney General changed its position, reverting to the position it took in the Court of Appeal – that commissioners are not authorized to summarily deny a writ petition or to issue an order to show cause.

## DISCUSSION

As explained *post*, the Court of Appeal was correct both in its interpretation of section 259, subdivision (a) and in its conclusion that section 259, subdivision (a) is constitutional.

### A. Interpretation of Section 259

Section 259, subdivision (a), gives every court commissioner the power to "[h]ear and determine ex parte motions for orders and alternative writs and writs of habeas corpus in the superior court for which the court commissioner is appointed." In interpreting a statute, we first " ' "scrutinize the actual words of the statute, giving them a plain and commonsense meaning." ' " (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) If the " 'language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary.' " (*Ste. Marie v. Riverside County Regional*

5

*Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 288.)  The plain language of the statute authorizes commissioners to grant or deny ex parte petitions for writs of habeas corpus and alternative writs.

Section 259, subdivision (a), authorizes commissioners only to determine "ex parte motions" for orders and writs.  An "ex parte motion" is "[a] motion made to the court without notice to the adverse party; a motion that a court considers and rules on without hearing from all sides." (Black's Law Dict. (9th ed. 2009) p. 1106, col. 2.)  As explained below, both alternative writs and writs of habeas corpus may be granted or denied on an ex parte basis.

A writ of mandate may be issued by any court to "any inferior tribunal, corporation, board, or person, to compel the performance of an act" that the law requires be performed.  (§ 1085, subd. (a).)  A petition seeking a writ of mandate will normally include a request for issuance of an alternative writ, which would direct the respondent to either perform the act that the petitioner alleges is required, or to show cause before the court why it is not required to do so. (§ 1087.)  The court may deny the application for an alternative writ and dismiss the petition if the petition fails to allege a prima facie case for relief or is procedurally defective.  (See, e.g., *Dare v. Board of Medical Examiners* (1943) 21 Cal.2d 790, 797.)  Otherwise, the court may issue the alternative writ without prior notice to the respondent, before the respondent has filed a response of any kind, and without a hearing.[2]  (§ 1088.)  After an alternative writ is issued, it must be

---

[2]    In contrast, a "peremptory writ" grants the relief requested in the petition by directing the respondent to do the act that the law requires be performed. (§ 1087.)  The peremptory writ cannot be issued in the first instance without proper notice and an opportunity for the respondent to be heard.  (§ 1088; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1240.)

6

served on the respondent with a copy of the petition, thereby providing notice of the petitioner's claims. (§ 1088.) The respondent then files a "return" or answer to the petition and a hearing is conducted. (§ 1089.) Thus, the grant or denial of an alternative writ of mandate without an appearance by the adverse party is an ex parte matter. (See *People v. Surety Insurance Co.* (1975) 48 Cal.App.3d 123, 126 [commissioner was authorized to order forfeiture of bail bond because "by the very fact of the defendant's nonappearance, this function is performed ex parte"]; *Lewis v. Neblett* (1961) 188 Cal.App.2d 290 [commissioner may order appearance of judgment debtor for examination before a referee, because such an order may be made ex parte]; *Estate of Roberts* (1943) 49 Cal.App.2d 71, 77-78 [commissioner may approve a probate claim because approval of the claim is an ex parte order].)

The procedures in a habeas corpus proceeding are similar. "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." (Pen. Code, § 1473, subd. (a).) A court may summarily deny a petition for writ of habeas corpus for the same reasons that justify summary denial of a petition for writ of mandate — because it fails to state a prima facie case or because it is procedurally defective. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474-475; *People v. Clark* (1993) 5 Cal.4th 750, 769, fn. 9.) If the petition is granted, the court issues the writ of habeas corpus, directed to the person having custody of the petitioner and "command[ing] him to have the body of such person [brought] before the court or judge before whom the writ is returnable, at a time and place therein specified." (Pen. Code, § 1477.) The granting of the writ of habeas corpus does not grant the relief requested in the petition; it merely initiates the process of resolving the petitioner's claim. Because many issues cognizable on habeas corpus may be resolved without the presence of

7

the petitioner, courts have developed the practice of issuing an order to show cause in lieu of issuing a writ of habeas corpus. (*In re Hochberg* (1970) 2 Cal.3d 870, 874, fn. 2.) The order to show cause directs the respondent to file a written return. (*Ibid.*) Thus, in a habeas corpus proceeding, the issuance of the writ of habeas corpus or an order to show cause serves the same function as an alternative writ serves in a mandate proceeding: it provides notice to and calls for a response by the respondent. Before the writ or order to show cause issues, no appearance by respondent is required.[3] Thus, the granting or denial of a habeas corpus petition (or an order to show cause in a habeas corpus proceeding) without an appearance by the respondent constitutes an ex parte matter.

The use in section 259, subdivision (a), of the phrase "ex parte motions for orders and . . . writs" rather than language more specific to writ practice — such as "ex parte motions for orders and *petitions* for writs" — is somewhat inapt. The application for a writ of mandate or habeas corpus is generally referred to as a petition, not a motion. (See Pen. Code, § 1474 ["Application for the writ [of habeas corpus] is made by petition"]; *Dare v. Board of Medical Examiners, supra,* 21 Cal.2d at p. 796 ["The proceeding [for a writ of mandate] is initiated by the filing of a verified petition. The practice is to present the petition to the court with a request that the alternative writ be issued ex parte."].) Nonetheless, the term "motion" is broad enough to include petitions for alterative writs or writs of

---

[3]    The applicable rule of court currently authorizes the court to request an informal response from the respondent before ruling on the petition, and the petitioner may reply to the informal response. (Cal. Rules of Court, rule 4.551(b).) Because the Lassen Superior Court did not request an informal response in the present case, we need not decide whether, in a case in which an informal response is requested and filed, the matter is not "ex parte" within the meaning of section 259, subdivision (a).

habeas corpus. A "motion" is "an application for an order." (§ 1003.) As described above, a writ petition, at the initial stage, seeks an order to show cause or an order of the court directing the issuance of a writ of habeas corpus or alternative writ. As such, a writ petition may fairly be described as an application for an order, which is the definition of a "motion."

Petitioners contend that section 259, subdivision (a) does not authorize a commissioner to deny a writ petition because such a denial constitutes a final judgment and a judgment does not constitute a mere "order." They point out that an "order," is "[e]very direction of a court or judge, made or entered in writing, *and not included in a judgment . . . .*" (§ 1003, italics added.) In a writ proceeding, a "judgment," "is the final determination of the rights of the parties." (§ 1064.) Section 259, subdivision (a), however, does not limit the commissioner's authority to *granting* the order sought. It gives the commissioner the authority to "[h]ear and determine" the motion. A grant of the authority to "[h]ear and determine" is a grant of subject matter jurisdiction. (See *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 ["jurisdiction in the fundamental sense" is the "power to hear and determine a cause"]; *Ex Parte Bennett* (1872) 44 Cal. 84, 88 ["[j]urisdiction has often been said to be 'the power to hear and determine.' "]; see also *Lewis v. Superior Court*, *supra*, 19 Cal.4th at p. 1251 [to hear a case means to consider and determine it].) Nothing in the language of section 259, subdivision (a) suggests that a commissioner who has the authority to "[h]ear and determine" an application for a writ lacks the authority to deny the requested writ.

Next, to the extent there is ambiguity in section 259, subdivision (a), petitioners contend that it should be interpreted in a manner that is consistent with the other subdivisions of the statute, which do not permit a commissioner to enter

9

a final order disposing of the matter without the consent of the parties.**4**

Petitioners invoke the principle of interpretation that statutes should be construed "in context, . . . and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379,

---

**4** Section 259 provides in full: "Subject to the supervision of the court, every court commissioner shall have power to do all of the following:

"(a) Hear and determine ex parte motions for orders and alternative writs and writs of habeas corpus in the superior court for which the court commissioner is appointed.

"(b) Take proof and make and report findings thereon as to any matter of fact upon which information is required by the court. Any party to any contested proceeding may except to the report and the subsequent order of the court made thereon within five days after written notice of the court's action. A copy of the exceptions shall be filed and served upon opposing party or counsel within the five days. The party may argue any exceptions before the court on giving notice of motion for that purpose within 10 days from entry thereof. After a hearing before the court on the exceptions, the court may sustain, or set aside, or modify its order.

"(c) Take and approve any bonds and undertakings in actions or proceedings, and determine objections to the bonds and undertakings.

"(d) Act as temporary judge when otherwise qualified so to act and when appointed for that purpose, on stipulation of the parties litigant. While acting as temporary judge the commissioner shall receive no compensation therefor other than compensation as commissioner.

"(e) Hear and report findings and conclusions to the court for approval, rejection, or change, all preliminary matters including motions or petitions for the custody and support of children, the allowance of temporary spousal support, costs and attorneys' fees, and issues of fact in contempt proceedings in proceedings for support, dissolution of marriage, nullity of marriage, or legal separation.

"(f) Hear actions to establish paternity and to establish or enforce child and spousal support pursuant to subdivision (a) of Section 4251 of the Family Code.

"(g) Hear, report on, and determine all uncontested actions and proceedings subject to the requirements of subdivision (d)."

1387; see *People v. Simon* (1995) 9 Cal.4th 493, 514.) This principle, however, does not require us to interpret different subdivisions of a statute in a similar manner when their language indicates that they should be interpreted independently. As noted above, section 259, subdivision (a) permits commissioners to "[h]ear and determine" certain ex parte matters, while other subdivisions permit a commissioner only to hear and report on the specified matters. (See, e.g., § 259, subds. (b) ["make and report findings"], (e) ["[h]ear and report findings and conclusions"], (f) "[h]ear"].) By using different language in section 259, subdivision (a), the Legislature has made clear that it did not intend to limit a commissioner's authority under subdivision (a) in the manner that it is limited in other subdivisions. (See *West v. U. L. C. Corp.* (1965) 232 Cal.App.2d 85, 89 [in subdivision giving commissioners the authority to " 'hear, report on, and determine' " uncontested actions, "the Legislature intended to give the commissioners power to determine the matters coming within it, because in a situation where the Legislature merely wanted the commissioners to report their determinations to the court, it knew exactly how to express itself"].)

## B. Constitutionality of Section 259, Subdivision (a)

The California Constitution authorizes the Legislature to "provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." (Cal. Const., art. VI, § 22 (hereafter article VI, section 22).) Petitioners contend that the denial of a writ petition constitutes a final judgment, the rendering of which cannot be deemed a "subordinate judicial dut[y]." They argue that the constitutional authority of commissioners should be interpreted in a manner consistent with the authority granted commissioners in other provisions of section 259 and in other statutes, which do not include the authority to render a final judgment except in uncontested matters or with the

11

agreement of the parties, or in less significant matters such as traffic infractions and small claims.**5** Consequently, petitioners contend, section 259, subdivision (a) should be interpreted to authorize commissioners to decide only preliminary or incidental matters, including issuing an alternative writ or order to show cause, but not to issue a final order denying a petition.**6**

---

**5** See Government Code section 72190 ("At the direction of the judges, commissioners may have the same jurisdiction and exercise the same powers and duties as the judges of the court with respect to any infraction or small claims action"), Government Code section 72401, subdivision (c) ("With respect to any infraction, [a traffic referee] may have the same jurisdiction and exercise the same powers and duties as a judge of the court"); see also Government Code section 72190.1 ("A commissioner may conduct arraignment proceedings on a complaint . . . including the issuance and signing of bench warrants."), Government Code section 72190.2 ("[A] commissioner may issue and sign a bench warrant for the arrest of a defendant who fails to appear in court when required to appear by law or who fails to perform any act required by court order").

**6** For purposes of this case, we may accept petitioners' characterization of the summary denial of a writ petition as a final order or a final judgment. We note, however, that the consequences of a summary denial of a writ petition differ in some respects from the consequences of a final judgment in a fully adjudicated case. For example, the denial of an application for an alternative writ or the summary denial of a habeas corpus petition does not establish law of the case and does not have a res judicata effect in future proceedings. (See *Kowis v. Howard* (1992) 3 Cal.4th 888, 893 [appellate court's summary denial of pretrial writ is not law of the case, even when it is clear the petition was denied on the merits]; *Funeral Dir. Assn. v. Bd. of Funeral Dirs.* (1943) 22 Cal.2d 104 [Supreme Court's denial of application for writ of mandate without written decision was a refusal to exercise original jurisdiction and not res judicata in subsequent writ proceedings in superior court seeking same relief].) Furthermore, a summary denial may not be final when the denial is made without prejudice to petitioner applying for further relief. (See, e.g., *In re Swain* (1949) 34 Cal.2d 300, 304 [application for writ of habeas corpus denied for failure to sufficiently allege facts supporting claims, without prejudice to the filing of a new petition]; *Gibson v. Savings & Loan Commissioner* (1970) 6 Cal.App.3d 269 [trial court's summary denial of an alternative writ without prejudice to petitioner amending his petition and reapplying for relief was not a final, appealable order].)

In determining whether section 259, subdivision (a) is constitutional, we must bear in mind that "[t]here is a 'strong presumption in favor of the Legislature's interpretation of a provision of the Constitution.' [Citation.] ' "When the Constitution has a doubtful or obscure meaning or is capable of various interpretations, the construction placed thereon by the Legislature is of very persuasive significance." ' [Citation.] ' "For the purpose of determining constitutionality, we cannot construe a section of the Constitution as if it were a statute, and adopt our own interpretation without regard to the legislative construction." ' [Citations.]" (*Mt. San Jacinto Community College Dist. v. Superior Court* (2007) 40 Cal.4th 648, 656.)

### 1. History of article VI, section 22

The history of article VI, section 22 strongly supports the conclusion that section 259, subdivision (a) is constitutional.

Prior to the revision of the California Constitution in 1966, the relevant section of the Constitution authorized the Legislature to "provide for the appointment, by the several superior courts, of one or more commissioners . . . with authority to perform chamber business of the judges of the superior courts, to take depositions, and to perform such other business connected with the administration of justice as may be prescribed by law." (Cal. Const., art. VI, former § 14, as adopted Nov. 4, 1924.) The report of the California Constitution Revision Commission, which proposed and recommended the 1966 revisions, states: "The existing section [14] raises the problem of defining 'chamber business' since many 'judicial' duties can be performed in chambers. To indicate the subordinate nature of duties that officers such as commissioners should be allowed to perform, the phrase 'subordinate judicial duties' was used." (Cal. Const. Revision Com., Proposed Revision of the Cal. Constitution (1966) p. 99.)

13

In *Rooney*, *supra*, 10 Cal.3d 351, this court explained that the "words 'subordinate judicial duties' were intended by the draftsmen as an appropriate constitutional phrase sufficiently broad to permit specific details to be later enacted or adopted by the legislative or rulemaking agencies. [Citations.] The reference to 'judicial' duties was not intended to preclude assignment of ministerial or administrative duties to court commissioners but was intended to eliminate any possibility that assigning *subordinate judicial duties* to commissioners would violate the constitutional doctrine of separation of powers." (*Id*. at p. 362.)

In *Rooney* this court examined the voter information pamphlet for the election at which the constitutional revision was adopted, and found "no indication of any intent to change or restrict the judicial powers assignable to court commissioners." (*Rooney*, *supra*, 10 Cal.3d at p. 364, fn. 10.) This court concluded that "[n]othing in the history of the drafting and adoption of the constitutional provision indicates that the phrase 'subordinate judicial duties' should be interpreted as foreclosing or limiting court commissioners from exercising the powers which the Legislature had conferred upon them prior to 1966. . . . [¶] The absence of any manifestation of intent on the part of the framers of the revision of article VI to modify the powers of court commissioners under long-existing legislation affirmatively shows that they intended no such change." (*Id*. at p. 364.)

At the time that article VI, section 22 was adopted in 1966, long-standing legislation authorized commissioners to determine ex parte writ petitions. The language of section 259, subdivision (a) has varied somewhat since it was originally adopted in 1872, and it has been amended at times to include specific exceptions and limitations. Nevertheless, it has always included language similar to that contained in the current version whose most reasonable, plain meaning

14

permits commissioners to determine whether to issue or deny an ex parte writ of habeas corpus or alternative writ.

As adopted in 1872, the statute gave every commissioner the power "[t]o hear and determine ex parte motions for orders and writs (except orders or writs of injunction)." (See history, Deering's Ann. Code Civ. Proc., (1991 ed.) foll. § 259, p. 485.) In 1880, it was amended to add a proviso granting such authority "only in the absence or inability to act of the judge or judges of the superior court." (Code Civ. Proc., former § 259, as amended by Code Civ. Proc Amends. 1880, ch. 35, p. 51.) In 1929, the Legislature adopted section 259a, which granted commissioners in counties with a population over 900,000 the authority "[t]o hear and determine ex parte motions for orders and alternative writs and writs of habeas corpus," but eliminated the proviso that such authority could be exercised only in the absence or inability to act of the judges of the court. (Stats. 1929, ch. 874, § 2, p. 1937.)[7] Section 259a was still in effect in 1966. Thus, at the time of the adoption of the 1966 constitutional revision, commissioners were already authorized to "hear and determine ex parte motions for writs."[8] Under the rationale of *Rooney*, we infer that article VI, section 22 preserved this authority.[9]

---

[7]    In 1980, section 259a was repealed and section 259 was amended to track the language of former section 259a, granting commissioners of all courts the power "[t]o hear and determine ex parte motions, for orders and alternative writs and writs of habeas corpus . . . ." (Stats. 1980, ch. 229, § 1, p. 472.) Finally, an amendment in 1996 deleted the comma following "ex parte motions," leaving the language in its current form. (Stats. 1996, ch. 957, § 1, p. 5665.)

[8]    *Rooney* states at one point that "[t]he scope of the subordinate judicial duties which may be constitutionally assigned to court commissioners should be examined in the context of the powers that court commissioners had *and were exercising* in 1966." (*Rooney*, *supra*, 10 Cal.3d at p. 362.) We have been unable to discover any evidence concerning whether commissioners in 1966 were actually exercising the authority granted in section 259a. We asked the parties, the superior court, and amicus curiae California Court Commissioners Association to

*(footnote continued on next page)*

15

address this point, and none could provide any information. *Rooney*, however, did not cite any evidence that commissioners were actually exercising the specific authority at issue in that case — the authority to decide uncontested matters. Rather, it noted generally that commissioners, particularly in Los Angeles County, were making a significant contribution to the reduction of the workload of the superior courts in 1966 by exercising the powers authorized by section 259a. (*Rooney*, *supra*, at pp. 361-363.) Consequently, we do not believe that the absence of evidence concerning whether commissioners actually exercised the authority to determine ex parte writs before 1966 is critical.

**9** Furthermore, the authority granted commissioners in section 259, subdivision (a) to "[h]ear and determine ex parte motions for writs" is clearly consistent with the constitutional authority of commissioners prior to 1966. As noted above, prior to 1966, the state Constitution authorized the Legislature to provide for the appointment of commissioners with the authority to "perform chamber business of the judges of the superior courts." (Cal. Const., art. VI, former § 14, as adopted Nov. 4, 1924.) In 1872, at the same time that section 259 was first adopted, section 166 was adopted, defining chamber business. That statute provided that judges, "at chambers" may "grant all orders and writs which are usually granted in the first instance upon ex parte applications, and may, at chambers, hear and dispose of such writs . . . ." (Code Civ. Proc. (1872) § 166.) The current version of the statute defining "chamber business" contains nearly identical language. (See § 166, subd. (a)(1) [judges, "in chambers," may "[g]rant all orders and writs that are usually granted in the first instance upon ex parte application, and hear and dispose of those orders and writs"].)

Additionally, section 166 (both prior to 1966 and in its current form as § 166, subd. (b)) authorizes judges to, "out of court, anywhere in the state, exercise all the powers and perform all the functions and duties conferred upon a judge as contradistinguished from the court, or that a judge may exercise or perform in chambers." (See also Code Civ. Proc., former § 166, as amended by Stats. 1933, ch. 743, § 47, pp. 1827-1828.) Article VI, section 10 of the California Constitution, like its predecessor, provides that "superior courts, *and their judges* have original jurisdiction in habeas corpus proceedings." (Italics added; see also Cal. Const., art VI, former § 5, as amended Nov. 28, 1928 [granting "superior courts, and their judges" the "power to issue writs of mandamus, certiorari, prohibition, quo warranto, and habeas corpus . . . in their respective counties"].) This constitutional grant of authority to judges "as contradistinguished from the court" to determine habeas corpus matters further reinforces the conclusion that

*(footnote continued on next page)*

Petitioners contend that *Rooney* need not guide our decision here because its conclusions regarding article VI, section 22 were dicta, in that the ultimate holding in *Rooney* was that the actions of the commissioner at issue were not authorized by statute. Rooney held that section 259's grant of authority to commissioners to determine uncontested actions was constitutional, but that the matter at issue in that case was not uncontested. Even so, petitioners point to no flaw in *Rooney*'s analysis of article VI, section 22 or in its conclusion that the intent of that section was to "validate preexisting powers" of court commissioners. (*Rooney, supra*, 10 Cal.3d at p. 364.)

Petitioners additionally contend that a summary denial of a writ petition can have significantly more negative consequences for a petitioner than it did in 1966 and that these consequences remove the denial of a writ petition from the category of "subordinate judicial duties." Petitioners argue that "[s]ince 1966, this Court has tightened and given teeth to 'the rule that absent a change in the applicable law or the facts, the court will not consider repeated applications for habeas corpus presenting claims previously rejected.' (*In re Clark* (1993) 5 Cal. 4th 750, 767.)" Under the circumstances here, denial of a petition regarding conditions of confinement, we disagree. *In re Clark* involved a habeas corpus petition claiming that the petitioner's conviction and death sentence were invalid. (*In re Clark, supra*, 5 Cal.4th 750 (*Clark*).) *Clark* recognized that the long-standing bar against "successive petitions" — those raising the same issues rejected in a prior petition or challenging a conviction or sentence on grounds not raised in a prior petition —

---

*(footnote continued from previous page)*

such matters were "chamber business," that could be delegated to commissioners both before and after the 1966 constitutional revision.

17

had sometimes been treated as discretionary.  (*Id*. at p. 768.)  *Clark* clarified that the denial of a habeas corpus petition — including a summary denial — precludes consideration of a successive petition unless the petitioner justifies the delay in seeking relief or demonstrates that "a *fundamental* miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence."  (*Id*. at p. 797.)  *Clark* also set forth specific definitions of what constitutes a miscarriage of justice in this context.  (*Id*. at pp. 787-797.)

As is obvious from the above discussion, to the extent that *Clark* altered the law regarding successive petitions, it did so in the context of petitions that seek to collaterally challenge a criminal conviction.  *Clark* explained that procedural rules barring delayed and successive writs "are necessary both to deter use of the writ to unjustifiably delay implementation of the law, and to avoid the need to set aside final judgments of conviction when retrial would be difficult or impossible."  (*Clark, supra,* 5 Cal.4th at p. 764.)  Such rules "are simply manifestations of this court's resolve to balance the state's weighty interest in the finality of judgments in criminal cases with the individual's right — also significant — to a fair trial under both the state and federal Constitutions."  (*In re Harris* (1993) 5 Cal.4th 813, 830.)  Courts have not strictly applied *Clark's* formulation of the rules regarding timeliness and their limited exceptions to cases in which the habeas corpus petition does not attempt to collaterally attack the petitioner's conviction or sentence.  (See *In re Espinoza* (2011) 192 Cal.App.4th 97 [petition challenging prison policies regarding visitation]; *In re Burdan* (2008) 169 Cal.App.4th 18 [petition challenging parole decision].)

To resolve the present dispute we need not decide whether section 259, subdivision (a) would be constitutional in every circumstance in which it might apply.  Petitions for writs of mandate and writs of habeas corpus may be brought in a superior court under many different circumstances and for many different

18

purposes.[10]  In the present case petitioners do not seek to collaterally attack their

criminal convictions, and there is no evidence before us that the Lassen Superior

Court, or any other superior court, has assigned commissioners to determine such

petitions.  Consequently, our decision in *Clark* is not relevant to the question of

whether the petitions in this case could properly be decided by a commissioner.

Similarly, petitioners contend that the consequences of the denial of a state

habeas corpus petition are more significant today than they were in 1966 because

under current federal law, with limited exceptions, a federal court hearing a habeas

corpus petition based on the same claims summarily rejected by a state court will

refuse to hear any claim that the state court decided was barred because of a

procedural default.  (*Coleman v. Thompson* (1991) 501 U.S. 722, overruling *Fay v.*

---

**10**    Historically, the function of the writ of habeas corpus was to "releas[e] a
person imprisoned or restrained as a result of a void proceeding or jurisdictional
defect in the imprisoning authority."  (*In re Jackson* (1964) 61 Cal.2d 500, 503;
see *Ex parte Long* (1896) 114 Cal. 159 [habeas corpus could not be used to inquire
into whether petitioner's conduct violated the ordinance under which he was
convicted, where the jurisdiction of the court was not contested and the judgment
of conviction was not void on its face].)  The writ has been expanded to address
wrongful imprisonment even in situations in which jurisdiction is not lacking.  (*In
re Jackson, supra*, at pp. 503-504.)

Additionally, "habeas corpus may be sought by one lawfully in custody for
the purpose of vindicating rights to which he is entitled in confinement."  (*In re
Jordan* (1972) 7 Cal.3d 930, 932; see, e.g., *In re Davis* (1979) 25 Cal.3d 384, 387
[challenging lengthy administrative and disciplinary segregation pending rules
violation hearing]; *In re Harrell* (1970) 2 Cal.3d 675, 682 [addressing access to
courts and conditions of confinement]; *In re Riddle* (1962) 57 Cal.2d 848, 851
[alleging cruelty by prison guards].)  Those rights include not only statutory or
constitutional violations, but also violations of administrative regulations.  (See,
e.g., *In re Dannenberg* (2005) 34 Cal.4th 1061 [challenging Board of Prison
Terms' failure to apply its own "matrix" regulations to parole-eligible inmates]; *In
re Van Geldern* (1971) 5 Cal.3d 832 [challenging regulation requiring inmate-
authors to relinquish 25 percent of royalties from published writings].)

19

*Noia* (1963) 372 U.S. 391.) However, it is not at all clear that federal habeas corpus would be available to a state prisoner who, like petitioners in the present case, seeks relief other than release from imprisonment, a reduction in sentence, or relief from a severe restraint on personal liberty. (See 28 U.S.C. § 2254(a) [a federal court "shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"]; *Hensley v. Municipal Court* (1973) 411 U.S. 345, 351 [habeas corpus is "a remedy for severe restraints on individual liberty"]; *Bell v. Wolfish* (1979) 441 U.S. 520, 526, fn. 6 [treating as an open question the propriety of the use of the writ of habeas corpus "to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself"].) Indeed, both petitioners in the present case indicated that they sought to file a federal civil rights action under section 1983 of title 42 of the United States Code, not a federal habeas corpus petition. In a federal civil rights action, although a prisoner must exhaust administrative remedies before suing prison officials, exhaustion of all state court remedies is not required and *Coleman v. Thompson* is not applicable. (See *Heck v. Humphrey* (1994) 512 U.S. 477, 480.) Consequently, a summary denial by a commissioner would not have consequences for a prisoner's ability to seek a remedy in a federal civil rights action in cases like the present one.

### 2. *Subordinate judicial duties*

Even if the historical analysis were not dispositive, our case law establishes that subordinate judicial duties are not limited to the rendering of decisions that are not final. In *Rooney*, we upheld a statute permitting commissioners to "hear, report on, and determine all uncontested actions and proceedings." (Former

20

§ 259a, subd. 6, as added by Stats. 1929, ch. 874, § 2, p. 1938.)[11]  We specifically

disapproved anything to the contrary in *Mosler v. Parrington* (1972) 25

Cal.App.3d 354, which had held that a commissioner lacked authority to render a

default judgment in an action in which the defendant had filed an answer but did

not appear at a hearing on a motion to strike the answer.  (*Rooney*, *supra*, 10

Cal.3d at p. 366; see also *West v. U. L. C. Corp.*, *supra,* 232 Cal.App.2d at p. 91

[holding that a statute permitting commissioners to hear and determine

uncontested matters was constitutional because such duties constituted " 'chamber

business' as used in the Constitution of 1879"].)

In *In re Kathy P.* (1979) 25 Cal.3d 91, we upheld a statute granting

juvenile traffic hearing officers full authority to hear and decide contested traffic

infraction cases.  Welfare and Institutions Code sections 255 and 256 authorize

juvenile court judges to appoint traffic hearing officers to hear and decide charges

against a minor involving any nonfelony violation of the Vehicle Code.  The

minor or the parent may request modification or rehearing of the hearing officer's

order by a judge, but is not entitled to a rehearing by a judge.  (Welf. & Inst. Code,

§ 262.)  We acknowledged that "[w]hen serious juvenile misconduct is charged,

_____

**11**     As adopted in 1929, and as it read at the time that *Rooney* was decided,
section 259a, subdivision 6, permitted commissioners in large counties to "hear,
report on, and determine all uncontested actions and proceedings other than
actions for divorce, maintenance or annulment of marriage." (Stats. 1929, ch. 874,
§ 2, p. 1938.)  In 1980, this same authority was incorporated into section 259,
subdivision 6 and thereby made applicable to commissioners in all counties.
(Stats. 1980, ch. 229, § 1, p. 472.)  The current version of section 259 permits
commissioners to decide uncontested matters only when authorized to act as a
temporary judge.  (§ 259, subd. (g) [authorizing commissioner to "[h]ear, report
on, and determine all uncontested actions, subject to the requirements of
subdivision (d)," which relates to a commissioner's authority to act as a temporary
judge upon stipulation of the parties].)

21

the referee's subjudicial authority to make a final determination extends to uncontested or collateral maters but not to contested adjudications." (*In re Kathy P.*, *supra*, at pp. 97-98; see *In re Edgar M.* (1975) 14 Cal.3d 727.) We concluded, however, that the adjudication of contested juvenile traffic infraction cases was properly characterized as a subordinate judicial duty. The minor nature of the offense (infractions are not punishable by imprisonment) and the high volume of cases justified simplified procedures.

In *Kathy P.*, we cited with approval the decision in *People v. Lucas* (1978) 82 Cal.App.3d 47 (*Lucas*), which held that Government Code section 72190, which grants commissioners the full authority of a judge in traffic infraction cases, was constitutional. *Lucas* concluded that "the unique and specialized function of trying infraction cases . . . could properly be ranked as 'subordinate' in relation to the diversity and complexity of the other duties of a municipal court judge." (*Lucas*, *supra*, at p. 54; quoted in *In re Kathy P.*, *supra*, 25 Cal.3d at p. 98.)

Giving appropriate deference to the Legislature's determination, the decision whether to summarily deny a petition for writ of mandate or habeas corpus may "properly be ranked as 'subordinate" in relation to the diversity and complexity of the other duties of a [superior] court judge." (*Lucas, supra,* 82 Cal.App.3d at p. 54.) A commissioner assigned to hear and determine an ex parte writ petition must determine, from the face of the petition, whether it states a prima facie case or is barred by some form of procedural default. These decisions require the judge or commissioner to apply the law to the facts as asserted in the petition; no issues of fact are decided. The circumstance that no hearing and no other form of input from the respondent is required is a reflection of the limited nature of the contemplated decision.

Even if, as petitioners contend, a writ petition at the initial, ex parte, stage is not technically an uncontested matter, the task of determining such a petition is

comparable in complexity to the task of determining an uncontested matter. *Lucas* pointed out that *Rooney* had upheld the authority of commissioners to hear uncontested matters. (*Lucas*, *supra*, 82 Cal.App.3d at p. 50.) *Lucas* noted that "in the hearing of some of the uncontested matters, a commissioner may be required to decide significant issues of law and make findings of fact which have the same import and finality as though made by a judge. For example, in default hearings, the court is required to receive evidence, determine the facts established by the evidence, and apply the law to these facts notwithstanding that the defendant has failed to answer. (Code Civ. Proc., § 585.)" (*Ibid*.) The determination of whether a petition states a prima facie case or is barred for procedural reasons is no more complex than the determination of many uncontested matters.[12]

Finally, petitioners contend that "[v]esting power in a commissioner to deny any and all habeas petitions is at odds with the power and majesty of the great writ." We have recognized that "the writ has been aptly termed 'the safeguard and the palladium of our liberties' [citation] and is 'regarded as the greatest remedy known to the law whereby one unlawfully restrained of his liberty can secure his release. . . .' [Citation.]" (*Clark, supra*, 5 Cal.4th at p. 764.)

---

[12] Petitioners additionally argue that we should limit commissioners to exercising the same authority in writ proceedings that may be exercised by federal magistrates, who may rule on *nondispositive* pretrial matters. (28 U.S.C. § 636(b)(1)(A).) State commissioners are not, however analogous to federal magistrates. The authority of federal magistrates is constrained not only by the terms of the federal authorizing statute but also by article III, section 1 of the federal Constitution, which vests the judicial power of the United States in judges who hold life tenure and enjoy undiminished compensation. (See generally *Gomez v. United States* (1989) 490 U.S. 858; *Mathews v. Weber* (1976) 423 U.S. 261.) In contrast, the California Constitution explicitly authorizes the Legislature to provide for commissioners who may exercise "subordinate judicial duties." (Art. VI, § 22.)

Petitioners in the present case do not seek release from confinement, however, and we need not decide in the present case whether the assignment of a commissioner to a case that challenged the prisoner's conviction or otherwise alleged grounds for release from confinement would be constitutional. In any event, our conclusion that making the initial determinations required at the ex parte stage of a writ proceeding constitutes a subordinate judicial duty is not based on any belief that the matters sought to be remedied through writs may be characterized as minor or insignificant. Rather, it is based on our recognition that the intent of the 1966 constitutional revision was to authorize commissioners to perform those tasks that had long been authorized under preexisting statutes, and that the tasks involved in making such threshold determinations are relatively limited and straightforward when compared to "the diversity and complexity of the other duties of a [superior] court judge." (*Lucas, supra,* 82 Cal.App.3d at p. 54.) Petitioners present no reason to believe that permitting commissioners to make those determinations in any way compromises the availability of the writ to perform its function of safeguarding liberties.

## CONCLUSION

The decision of the Court of Appeal is affirmed.

CANTIL-SAKAUYE, C. J.

**WE CONCUR:**

KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

24

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Gomez v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 179 Cal.App.4th 614
**Rehearing Granted**

_____

**Opinion No.** S179176
**Date Filed:** June 18, 2012

_____

**Court:** Superior
**County:** Lassen
**Judge:** Dawson Arnold, Commissioner

_____

**Counsel:**

Michael Satris, under appointment by the Supreme Court, for Petitioners.

Jon A. Nakanishi for Respondent.

F. Donald Sokol, Presiding Judge of the Lassen County Superior Court, for Respondent, upon the request of the Supreme Court.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Julie L.Garland, Assistant Attorney General, Jessica N. Blonien, Heather M. Heckler, Anya M. Binsacca and Christopher J. Rench, Deputy Attorney General, for Real Parties in Interest.

David E. Gunn for the California Court Commissioners Association as Amicus Curiae, upon the request of the Supreme Court.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Michael Satris
Post Office Box 337
Bolinas, CA  94924
(415) 868-9209

Christopher J. Rench
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 324-5374