Filed 10/19/21 (unmodified opinion and 9/29/21 pub. order attached)
<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

| | |
|---|---|
| In re ALEX MARTI on Habeas Corpus. | C093153<br><br>(Super. Ct. No. 19HC2112)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 3, 2021, and ordered filed for publication on September 29, 2021, be modified as follows:

On page 5, under part I of the Discussion, second paragraph, delete the sentence that begins "Respondent recognizes that petitioner's claim" and replace the it with the following sentence:  Respondent argues that even if petitioner's claim that it has acted inconsistently with prison regulations is cognizable, it is nevertheless moot.

There is no change in the judgment.  The petition for rehearing is denied.

BY THE COURT:


 /s/
Robie, Acting P. J.


 /s/
Hoch, J.


 /s/
Krause J.


1

Filed 9/3/21; Certified for Publication 9/29/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

In re ALEX MARTI on Habeas Corpus.

C093153

(Super. Ct. No. 19HC2112)

Prison inmate Alex Marti filed this petition for writ of habeas corpus challenging respondent's (the warden of Mule Creek State Prison) decision adjudicating him guilty of a prison disciplinary violation for possession of excess property on May 5, 2019. This was adjudged to be an administrative violation rather than a serious rules violation. Among other claims, petitioner asserts that his rights under prison regulations were violated because the officer who adjudicated the violation had prior knowledge and involvement in a related matter that was considered as evidence at petitioner's disciplinary hearing.

Respondent argues this case is moot because petitioner has suffered the punitive consequences of the decision and any future impact on him is speculative. We conclude the matter is not moot as this court can afford petitioner meaningful relief. If this court

1

did not intervene, the violation would remain in petitioner's file and may be considered by prison officials in making decisions relating to petitioner. Prison regulations specifically provide for its consideration in imposing subsequent discipline. The violation may also factor into other prison decisions based simply on the fact that it remains an adjudicated violation. We further find petitioner's argument is well taken that the hearing officer should have been recused from acting in that capacity. Petitioner is entitled to have the officer's disciplinary finding vacated.

BACKGROUND

I

*January 14, 2019, Rules Violation Report*

A little less than four months before the violation at issue here, on January 14, 2019, Correctional Officer J. Brown discovered an electric grill while conducting a search that included petitioner's property. Petitioner was issued a notice of a rules violation for possession of the grill. In connection with this same search, Brown documented other items of "confiscated contraband" including items such as "excess" tennis shoes and Tupperware as well as sheets and pillow cases in excess of the state-issued quantity. As we shall explain, Brown claims to have also verbally instructed petitioner to bring himself into compliance with respondent's property limits.

Sergeant M. Rhode, Brown's reviewing supervisor, signed the rules violation report prepared by Brown. The matter proceeded to a disciplinary hearing solely on the issue of the electric grill, however, and petitioner was found guilty of the rules violation. For reasons not relevant here, that decision was subsequently vacated, and a rules violation report was reissued. Although Rhode did not sign the reissued report, it specifically referenced and incorporated the original January 14, 2019, report. The matter proceeded to a second disciplinary hearing, in which petitioner was again found guilty of the violation. In adjudicating the matter, the hearing officer referred to the original January 14, 2019, report as supporting the disciplinary finding.

2

## II

### *May 5, 2019, Rules Violation Report*

On May 5, 2019, Officer Brown conducted another search and prepared a report indicating petitioner was in possession of excess property. It was this search that resulted in the notice of rules violation that led to the disciplinary adjudication directly at issue here. Sergeant Rhode did not participate in this search, and a different officer (A. Ford) signed Brown's report as supervising officer. But Brown's rules violation report specifically referenced the January 14, 2019, search. After noting he had discovered excessive property, Brown added: "Additionally, on Monday January 14, 2019, I conducted a Dorm search in E21-D-206 and at the conclusion of my search I gave [petitioner] a verbal counseling about having excessive amounts of personal property and ordered him to bring himself into compliance with Property Limits outlined in Departmental policy."

Before the matter proceeded to the disciplinary hearing, petitioner filed a CDCR Form 22 inmate request for interview regarding the property seized on May 5, 2019. Dissatisfied with the response, petitioner requested supervisor review and the matter was forwarded to Rhode. Petitioner met with Rhode in person on May 30, 2019. According to petitioner, the discussion resulted in return of glasses that were seized. Rhode has prepared a declaration attached to the return acknowledging he spoke with petitioner but explaining he does not recall the specifics of the conversation. He emphasizes the purposes of the Form 22 procedure is to allow inmates a means of requesting interviews and services that are not part of the disciplinary process. Petitioner indicates in response, by declaration attached to the traverse, that Rhode discussed the matter extensively, Rhode demonstrated extensive familiarity with the underlying facts, and that their discussion included the January search as well.

The matter proceeded to a disciplinary hearing on June 8, 2019, in which Sergeant Rhode served as the hearing officer. Petitioner appeared and participated in the hearing.

3

He also provided a statement claiming the rules violation was improper stacking of discipline and that the January violation was vague, poorly written and ambiguous with respect to what constituted excess property. Petitioner denied being told by Brown to dispose of any property.

Sergeant Rhode found petitioner guilty of the violation as charged. In his decision at the time, Rhode explained that it was based on the cell search receipts documenting excess property taken on January 14, 2019, the fact that reporting Officer Brown stated he advised petitioner by receipt and verbally about the excess property at that time, and the evidence concerning the May 5, 2019, search. Rhode imposed a 30-day revocation of yard recreation privileges as a penalty and advised petitioner of his right to administrative appeal.

Related to petitioner's claim that Sergeant Rhode should not have served as the hearing officer based on his earlier involvement in reviewing the January 14, 2019, search, petitioner also asserts Rhode spoke to Officer Brown about the matter before the hearing. By declaration, Rhode responds that he does not recall any conversation on or shortly before the hearing but explains that, if he did so, "it would have been as his supervisor and in regards to our regular duties." Brown has also prepared a declaration, which explains: "While I did not speak with Sergeant Rhode about [petitioner's] disciplinary hearing or the pending charges, I often spoke to Sergeant Rhode because I was the security patrol officer every Saturday working in 'E' Facility program office and Sergeant Rhode was my direct supervisor."

### III

*Subsequent Procedural History*

Petitioner pursued an administrative appeal of the June 8, 2019, disciplinary finding, and he exhausted the administrative remedies. He filed a petition for writ of habeas corpus in the superior court, which was denied. He then sought relief in this court by petition for writ of habeas corpus, and this court issued an order to show cause

4

returnable in the superior court. The superior court again denied relief, finding the petition was moot and that the issues presented did not implicate petitioner's constitutional due process rights. Petitioner promptly filed the current petition for writ of habeas corpus in this court on December 9, 2020.

After soliciting informal opposition to the petition, we issued an order to show cause returnable in this court. The return was filed on March 30, 2021. Petitioner's counsel requested three extensions of time and, after the court indicated no more extensions would be granted, filed the traverse on August 2, 2021. Having reviewed the pleadings and exhibits on file with this court, the court finds no evidentiary hearing is necessary to resolve this petition. (See Cal. Rules of Court, rule 8.386(f).) Considering those facts that are not in dispute, petitioner is entitled to relief.

## DISCUSSION

### I

### *Cognizability Of Claim And Mootness*

Respondent claims that petitioner cannot state a claim for violation of his constitutional due process rights because of the lack of impact on credits impacting petitioner's eligibility for release from prison and because the prison decision does not constitute an atypical and significant hardship. There is some support for respondent's position, but that does not end the inquiry.

Habeas corpus may be used to broadly vindicate rights in confinement, including "not only statutory or constitutional violations, but also violations of administrative regulations." (*Gomez v. Superior Court* (2012) 54 Cal.4th 293, 309, fn. 10.) Respondent recognizes that petitioner's claim that it has acted inconsistently with prison regulations *is* cognizable, but nevertheless claims it is moot. We disagree.[1]

---

[1] Considering our conclusion, we need only resolve the question of whether respondent has violated petitioner's rights under the applicable prison regulations and not whether petitioner retains any constitutional due process claim. To the extent *In re*

5

Respondent argues the matter is moot because the disciplinary decision does not currently impact petitioner. "A case is moot when the reviewing court cannot provide the parties with practical, effectual relief." (*City of San Jose v. International Assn. of Firefighters, Local 230* (2009) 178 Cal.App.4th 408, 417.) The underlying policy behind the mootness doctrine is that courts decide justiciable controversies and do not normally render merely advisory opinions. (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178-1179.) Mootness may be considered alongside the purposes of habeas corpus and the courts' concomitant "broad remedial powers" to afford relief. (See *People v. Aragon* (1992) 11 Cal.App.4th 749, 760.) The court may dispose of a habeas petition in the manner justice requires, with the flexibility to correct miscarriages of justice. (*In re Brindle* (1979) 91 Cal.App.3d 660, 669-670.) Accordingly, habeas corpus may even be used to secure a declaration of a petitioner's rights. (*Ibid.*)

Respondent points out that the prison regulations do not allow administrative violations, such as this one, to be used in calculating a defendant's score for classification purposes. (See Cal. Code Regs.,[2] tit. 15, § 3375.4, subd. (b)(1)(A).) Respondent otherwise concedes the adjudication remains in his file and may be considered in the future, for example for purposes of classifying another violation as serious or administrative. (Tit. 15, §§ 3315, subd. (a)(2)(M), 3326.) But respondent argues the possibility it will be used to do so is speculative. Respondent uses a progressive

_____

*Johnson* (2009) 176 Cal.App.4th 290, might be read as indicating an inmate who lacks a constitutional due process claim cannot otherwise challenge a prison decision as inconsistent with prison regulations, we reject it. The state Supreme Court is quite clear that an inmate may assert statutory rights and rights under prison regulations, and its decision is consistent with longstanding authority. (See *Gomez v. Superior Court*, *supra*, 54 Cal.4th at p. 309, fn. 10, and cases cited therein.)

[2] Further undesignated regulation references are to title 15 of the California Code of Regulations (title 15).

disciplinary system, in which misconduct that is minor may result in verbal counseling achieving corrective action. (Tit. 15, § 3312, subd. (a)(1).) Other minor misconduct may be subject to a written counseling chrono that does not subject the inmate to discipline. (Tit. 15, § 3312, subd. (a)(2).) Under the circumstances presented, imposition of formal discipline will inform future decisions relating to whether and to what extent to impose discipline on petitioner. And petitioner reasonably points out that as an inmate with a life sentence, he will continue to accumulate property and could face additional consequences going forward from the disciplinary adjudication.

Moreover, respondent does not acknowledge the full scope of potential prison decisions in which documented misconduct may come into play. Parole consideration would be an obvious decision that might typically be impacted if not for the fact the petitioner is serving a sentence of life without the possibility of parole. It is unclear to what extent work or programming decisions might also be impacted. Petitioner points out that an administrative violation may be referred to a classification committee for consideration if an inmate is determined to be a "program failure." (Tit. 15, § 3314, subd. (i).) That was not apparently done at this stage, however. But that is not to say it might not factor into future decisions or otherwise be considered by a classification committee in making decisions relating to petitioner. (See tit. 15, § 3044, subd. (c).)

Whatever the full scope of prison decisions that may be affected by adjudication of an administrative rules violation, it is clear this court can afford petitioner meaningful relief by vacating Rhode's June 8, 2019, adjudication of the administrative rules violation. Vacating the disciplinary finding would ensure a disciplinary determination by a hearing officer who should not have served in that capacity does not factor into any future prison decision, including further prison disciplinary hearings. To accept respondent's position that the matter is moot would also allow respondent to ignore its own regulations with respect to inmates such as petitioner because court review would

7

rarely occur before the immediate consequences of the decision have ended. This is inconsistent with the broad remedial powers afforded a court in habeas corpus.

## II

*Merits*

Petitioner complains that Sergeant Rhode should not have been allowed to serve as the hearing officer. He also raises various claims concerning violations of his rights at the hearing. We find it unnecessary to address all of these claims given our conclusion that petitioner's rights under prison regulations were violated based on Sergeant Rhode acting as the hearing officer and adjudicating the disciplinary violation at issue. We turn to the substance of this claim, which concerns prison regulations barring officers from acting as the hearing officer.

Sergeant Rhode had no direct involvement with the May 2019 search or report. However, the disciplinary report for that May search contained the statement of the reporting officer specifically referencing the January 14, 2019, report that Rhode reviewed. Moreover, Rhode actually cited the January search and Brown's claim that he warned petitioner about excess property as evidence in his decision. Section 3320, subdivision (h) of title 15 provides: "Staff who observed, reported, classified, supplied supplemental reports to, or investigated the alleged rule violation; who assisted the inmate in preparing for the hearing; or for any other reason have a predetermined belief of the inmate's guilt or innocence shall not hear the charges or be present during deliberations to determine guilt or innocence and disposition of the charges." Penal Code section 2932, subdivision (c)(1)(A) provides some context for the regulation at issue. Although the statute specifically refers to "serious disciplinary infractions" rather than administrative violations, as here, the provision that a hearing officer be "an individual who shall be independent of the case" helps inform a reasonable construction of the regulation at issue.

8

Respondent responds that Sergeant Rhode's role in connection with the January search did not include observing or investigating petitioner's conduct at issue in the May search. Respondent argues that, even assuming it was "somehow related," "the first rules violation report that Sergeant Rhode reviewed was vacated and the new disciplinary report was reviewed and classified by other officers." Respondent points to the evidence that even though petitioner was ultimately adjudicated guilty of the violation, it was only after a second hearing. As noted above, the initial finding was vacated and the matter was ordered reheard.

But the fact remains that the original report that was prepared following the search in January was immediately reviewed by Sergeant Rhode. If Rhode had any issue or concern relating to the search, he would presumably have raised it with Brown at that time. Rehearing the matter does not change the fact that it was the January search and report prepared by Brown, which Rhode reviewed, that initially followed that search. The January report continued to be referenced at rehearing of the matter, and the underlying search was likewise referenced at the time petitioner was later adjudicated of the violation at issue here.

In fact, the January search and claim by Brown that he warned petitioner about excessive property informed how the current violation was treated, resulting in petitioner being charged with and adjudicated for an administrative rules violation. This is consistent with prison regulations, which give the hearing officer the authority to determine the seriousness of the misconduct, including his or her discretion to dismiss a formal rules violation and report alleged misconduct as a custodial counseling chrono. (See tit. 15, § 3314, subds. (f)-(h).) Accordingly, the earlier warning by Brown remained relevant to what Sergeant Rhode was considering at the hearing at issue. It was key evidence at the hearing and Rhode credited it, in the process, rejecting petitioner's claims challenging what Brown had reported. The fact that Rhode also discussed the case with petitioner himself in advance of the disciplinary adjudication, in response to his Form 22

9

request, is likewise problematic under the particular circumstances of this case, taking into account his other involvement.

Finally, while we do not directly reach petitioner's claim that Rhode and Brown improperly spoke about the matter at issue before the hearing, their relationship and the communications between these officers cannot be ignored. They acknowledge regularly speaking given that Rhode has served as Brown's supervisor. These conversations continued subsequent to the January search. The relationship between the officers would appear insufficient, in itself, to bar Rhode from serving as a hearing officer. But it does tend to bolster petitioner's claim that Rhode should not have been permitted to serve as the hearing officer given his involvement in reviewing Brown's January report and search.

In short, there is some evidence that Rhode "investigated" evidence directly relevant to adjudication of the violation at issue here. This reasonably falls within the provision of title 15, section 3320, subdivision (h), referring to: "Staff who observed, reported, classified, supplied supplemental reports to, or investigated the alleged rule violation . . . ." But even assuming for the sake of argument that Rhode's conduct did not meet this specific criterion, it unequivocally meets the catchall provision in the same regulation. Rhode's involvement in reviewing the January report that was central to adjudication of the violation at issue coupled with the other facts is such that "for any other reason," one can reasonably conclude he had "a predetermined belief of the inmate's guilt or innocence" of *an administrative rules violation.* (*Ibid.*) Given Rhode's involvement, it appears a reasonable person in his position would likely have credited Officer Brown's account of the January search before hearing the disciplinary violation at issue here. Likewise, the reasonable consequence of this was that Rhode would have been disinclined to consider the evidence petitioner presented and exercise his discretion to dismiss the violation and report it as a counseling chrono. Although respondent suggests we defer to its own interpretation of the regulation as within its special

10

expertise, we find nothing that would cause us to depart from the reasonable interpretation we afford the plain language of the regulation as applied in the current matter.  (Cf. *Capen v. Shewry* (2007) 155 Cal.App.4th 378, 390-393.)

## DISPOSITION

The disciplinary adjudication of June 8, 2019, by hearing officer M. Rhode is reversed and respondent is directed to remove the record of this adjudication from petitioner's file.


/s/
Robie, Acting P. J.



We concur:



/s/
Hoch, J.



/s/
Krause J.

11

Filed 9/29/21

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

|  |  |
|---|---|
| In re ALEX MARTI on Habeas Corpus. | C093153<br><br>(Super. Ct. No. 19HC2112)<br>ORDER CERTIFYING<br>OPINION FOR PUBLICATION |

THE COURT:

The opinion of this court filed September 3, 2021, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in its entirety in the Official Reports and it is so ordered.

BY THE COURT:


/s/_____
Robie, Acting P. J.


/s/_____
Hoch, J.


/s/_____
Krause J.


1

EDITORIAL


       Petition for writ of habeas corpus challenging a disciplinary adjudication by the Department of Corrections and Rehabilitation.  Disciplinary adjudication reversed with directions.

       Susan Jordan, under appointment by the Court of Appeal, for Petitioner..

       Xavier Becerra, Attorney General and Heather M. Heckler, Deputy Attorney General, for Respondent.