Filed 5/13/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent, | E072845 |
| v. | (Super.Ct.No. RIF100589) |
| TERRELL LAW,<br>    Defendant and Appellant. | The County of Riverside<br><br>ORDER MODIFYING OPINION<br>AND DENYING PETITION FOR<br>REHEARING<br>[NO CHANGE IN JUDGMENT] |

_____

THE COURT

     We deny appellant Terrell Law's petition for rehearing and modify the opinion filed in this matter on April 27, 2020 by inserting the following language to part II.B, section 2, at the top of page 19, in between the parenthetical ending with "crime only" and the sentence "Law's conduct is clearly distinguishable":

> (See, e.g., *In re Miller*, *supra*, 14 Cal.App.5th at p. 965 [defendant played the role of "spotter" who would select the robbery target and was not at the scene of the robbery/murder]*; In re Bennett* (2018) 26 Cal.App.5th 1002, 1019 [defendant was involved in planning the robbery but was not at the scene of the murder]; *Ramirez*, *supra*, 32 Cal.App.5th at p. 404 [defendant acted as getaway driver and was not at the scene of the murder]; *In re Taylor* (2019) 34 Cal.App.5th 543, 559 [same].)

     Except for this modification, which does not affect the judgment, the opinion remains unchanged.

     CERTIFIED FOR PUBLICATION

                                   SLOUGH             
                                                            J.

We concur:

RAMIREZ _____

                                    P. J.

MENETREZ _____

                                    J.

Filed 4/27/20; Certified for publication 5/5/20 (order attached) (unmodified version)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072845 |
| v. | (Super.Ct.No. RIF100589) |
| TERRELL LAW, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meredith S. White and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

In 2001, appellant Terrell Law and his codefendant Brett May committed a home invasion robbery, during which one of them shot and killed one of the residents. In 2006, Law and May were tried jointly before two separately empaneled juries who found them both guilty of first degree felony murder with the special circumstance described in Penal Code section 190.2, subdivisions (a)(17)(A) and (d).[1] Though Law's jury found that he was not the shooter, in finding the special circumstance allegations true, they concluded he was "a major participant" in the underlying robbery and acted "with reckless indifference to human life." (§ 190.2, subd. (d).)[2]

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), which, among other things, amended the definition of felony murder in section 189. Under the new law, an accomplice to the underlying felony who was not the actual killer cannot be convicted of felony murder unless they aided in the murder with the intent to kill or were "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189.) The legislation also added section 1170.95, which establishes a procedure for vacating murder convictions predating the amendment that could not be sustained under the new definition of felony murder. (Stats. 2018, ch. 1015, § 4.)

---

[1] We took judicial notice of the appellate record of Law and May's criminal trial, case No. E041967. (Evid. Code, § 452, subd. (d).)

[2] Unlabeled statutory citations refer to the Penal Code.

2

In this appeal, Law challenges the trial court's summary denial of his section 1170.95 petition to vacate his murder conviction. He argues the trial court erred by reviewing his record of conviction and determining the jury's true finding on the special circumstance rendered him ineligible for relief. According to Law, two California Supreme Court cases decided after he was convicted—*People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*)—clarified what "major participant" and "reckless indifference to human life" mean for purposes of section 190.2, subdivision (d) and therefore require us to conclude his special circumstance finding was not supported by sufficient evidence. As we explain, it is proper for a trial court to review the record of conviction when determining whether a section 1170.95 petitioner has stated a prima facie claim for relief. Additionally, even under the principles articulated in *Banks* and *Clark* after Law was convicted, he undoubtedly qualifies as a major participant who acted with reckless indifference to human life, a conclusion that renders him ineligible for relief under section 1170.95. We therefore affirm the order denying his petition.

# I

# FACTS

We take the facts from the unpublished opinion we issued in 2008, affirming Law's and May's convictions in case No. E041967. (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1134, 1138 (*Lewis*), review granted Mar. 18, 2020, S260598 [in

3

determining the sufficiency of a section 1170.95 petition, the court may review the record of conviction, which includes the opinion in a defendant's direct appeal].)

Around 4:00 a.m. on May 1, 2001, Law and May went to the victim's house and waited until one of his roommates left for work. Armed with guns and wearing ski masks, they entered the house and encountered R. (another roommate) sleeping on the couch. They woke R. up and ordered him to the floor. While the first defendant guarded R., the second defendant went to the victim's bedroom to wake him up. The victim owned a gun, but the second defendant grabbed it before he could get to it. As this was happening, the first defendant was ordering R. to hand over his jewelry.

When the second defendant returned to the living room with the victim, he was holding two guns, his and the victim's. He ordered the victim to the floor, then began searching the rest of the house for money and marijuana while the first defendant stood guard in the living room. The second defendant found the safe in the victim's bedroom closet and came back to retrieve the victim. The victim refused to open the safe, so the first defendant brought R. into the room and ordered him to open it. When R. was unable to do so, the defendants ordered him to lie on the floor in the hallway.

Frustrated with the victim's resistance, the second defendant (the one holding two guns) pistol whipped the victim. The victim then ran into the bedroom of another roommate, A., turned on the lights, and screamed that defendants were "tripping." A. could tell the victim was panicked and scared. At that point, both defendants entered A.'s room, brandishing their guns. The second defendant tried to hit the victim with one of his

4

guns but dropped it when the victim blocked the blow with his arm. The second defendant picked up the gun, cursed at the victim, and shot him in the head. According to A., the defendants fled after the gunshot, and he ran to a neighbor's house to call 911.

Law's jury convicted him of first degree felony murder with the special circumstance described in section 190.2, subdivisions (a)(17)(A) and (d); one count of robbery; one count of attempted robbery; and two counts of assault with a firearm. As to the robbery and attempted robbery, they found true the allegation that a principal was armed with a firearm (§ 12022, subd. (a)), but found not true the allegation that Law personally and intentionally discharged a firearm during the robbery (§ 12022.53, subd. (d)). May's jury convicted him of first degree felony murder with the same special circumstance as Law; one count of attempted robbery; and two counts of assault with a firearm. They found true the allegations that a principal was armed with a firearm during the attempted robbery and that May personally and intentionally used a firearm during the murder and attempted robbery. (§ 12022.53, subd. (b).) Under these verdicts, neither jury found beyond a reasonable doubt which defendant was the actual killer. Law's jury concluded the prosecution had failed to prove beyond a reasonable doubt that he was the killer, and May's jury found he used a gun during the murder, which is not the same as finding he *discharged* a gun during the murder. In other words, the juries did not make a specific determination as to who shot the victim, which is not surprising given that both defendants wore ski masks that covered their faces during the entire incident. The trial

5

court sentenced Law to six years in prison plus life without the possibility of parole and sentenced May to 19 years 4 months in prison plus life without the possibility of parole.

In 2008, in case No. E041967, we affirmed defendants' convictions. In that appeal, neither defendant argued the evidence was insufficient to support the special circumstances robbery-murder finding. In 2015 and 2016, the California Supreme Court decided *Banks* and *Clark*, respectively, which discuss when section 190.2 authorizes a special circumstance life without parole sentence for a felony-murder defendant convicted as an aider and abettor. (*Banks*, *supra*, 61 Cal.4th at p. 794; *Clark*, *supra*, 63 Cal.4th at pp. 609-610.) Significantly, our high court clarified that participation in an armed robbery, on its own, is insufficient to support a finding that the defendant acted with reckless indifference to human life. "A sentencing body must examine the defendant's *personal* role in the crimes leading to the victim's death and weigh the defendant's individual responsibility for the loss of life, not just his or her vicarious responsibility for the underlying crime." (*Banks*, *supra*, 61 Cal.4th at p. 801.) "The defendant must be *aware of and willingly involved in* the violent manner in which the particular offense is committed," thereby "demonstrating reckless indifference to the significant risk of death his or her actions create." (*Ibid.*, italics added.)

In 2018, Law filed a petition for writ of habeas corpus, seeking to have his finding on special circumstances vacated for insufficient evidence under *Banks* and *Clark*. We summarily denied his petition.

In January 2019, after SB 1437 went into effect, Law filed a section 1170.95 petition to vacate his 2006 murder conviction. He alleged that he had been convicted of first degree murder under a felony murder theory and that he could not be so convicted under the new definition of felony murder because "I was not a major participant in the felony [and/or] I did not act with reckless indifference to human life during the course of the . . . felony." He requested counsel. He also erroneously checked the box stating that he was entitled to resentencing without a hearing because "There has been a prior determination by a court or jury that I was not a major participant and/or did not act with reckless indifference to human life under Penal Code § 190.2(d)." The People filed an opposition to Law's petition, arguing SB 1437 is unconstitutional and, in any event, he is not entitled to relief because the jury found he was a major participant in the robbery who acted with reckless indifference to human life, as defined in section 190.2, subdivision (d). They attached our 2008 opinion deciding Law's direct appeal, as well as the jury instructions on the special circumstance allegations from his trial.

On April 12, 2019, the trial court denied Law's petition. It explained that it had reviewed its own records and determined that the jury, having been properly instructed on special circumstance robbery-murder, found that he had been a major participant in the robbery who acted with reckless indifference to human life. Such a finding prevented him from making the required showing to obtain relief under section 1170.95. Law filed a timely appeal.

7

# II

# ANALYSIS

Law makes three arguments on appeal. First, he argues the trial court had no discretion to review the record of conviction when determining whether he had stated a prima facie claim for relief but was limited to the allegations in his petition. Second, he argues that even if the court could look beyond his petition to the record of conviction, the evidence is insufficient to support a finding that he was a major participant who acted with reckless indifference to human life under *Banks* and *Clark*. Finally, he argues the court erred by not appointing him counsel to aid him in responding to the People's opposition and convincing the court he had stated a prima facie claim for relief. As we will explain, his first two arguments are without merit and his third fails because, whether or not he was entitled to counsel at this stage of the petitioning process, counsel could not have altered the result of the proceedings. The trial evidence amply supports the jury's true finding under section 190.2, subdivision (d).

A.    *Standard of Review and Applicable Law*

We review de novo questions of statutory construction. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041.) "Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent.'" (*Ibid.*)

Section 1170.95 establishes the following procedure for processing petitions for relief. Section 1170.95 subdivision (a) provides that a person convicted of felony murder or murder under a natural and probable consequences theory may petition the trial court to have his or her murder conviction vacated and be resentenced on any remaining counts if the following conditions are met: (1) A charging document was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) The petitioner was convicted of first or second degree murder following a trial or an accepted plea; and (3) The petitioner could "not be convicted of first or second degree murder because of changes to Section[s] 188 or 189" made by SB 1437. (§ 1170.95, subd. (a); see also *Lewis*, *supra*, 43 Cal.App.5th at p. 1136.)

Section 1170.95, subdivision (b) states that the petition must include: a declaration from the petitioner that he or she is eligible for relief under the statute, the superior court's case number and year of conviction, and a statement as to whether the petitioner requests appointment of counsel. (§ 1170.95, subd. (b)(1).) If any of the required information is missing and cannot "readily [be] ascertained by the court, the court may deny the petition without prejudice to the filing of another petition." (§ 1170.95, subd. (b)(2).)

Section 1170.95, subdivision (c) sets forth the trial court's responsibilities once a complete petition has been filed: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of

9

this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

If the court issues an order to show cause, it must hold a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subd. (d).) At that hearing, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecutor and petitioner "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*)

In short, a section 1170.95 petitioner must first make a prima facie case for relief, and if they are able to do so, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and recall the sentence. (See, e.g., *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328 (*Verdugo*), review granted Mar. 18, 2020, S260493.) "'A prima facie showing is one that is sufficient to support the position of the party in question.'" (*Lewis*, *supra*, 43 Cal.App.5th at p. 1137, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851.)

10

B.    *Analysis*

1.    *The court properly reviewed the record of conviction*

Two opinions, *Lewis* and *Verdugo*, have already rejected the argument that a trial court is limited to the allegations in the petition when determining whether the petitioner has stated a prima facie claim for relief under section 1170.95.

In *Lewis*, the defendant argued "that the court could look no further than his petition in evaluating his prima facie showing and the court therefore erred when it considered [the] opinion in his direct appeal." (*Lewis*, *supra*, 43 Cal.App.5th at p. 1137.) In *Verdugo*, the defendant argued "the superior court lacked jurisdiction to deny his section 1170.95 petition on the merits" based on its review of the record of conviction "without first appointing counsel and allowing the prosecutor and appointed counsel to brief the issue of his entitlement to relief." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 323.) Analogizing to the well-established and similar resentencing procedures under Propositions 36 and 47, the *Lewis* and *Verdugo* courts rejected these arguments, concluding a trial court may consider the record of the petitioner's conviction, including documents in the court's own file and the appellate opinion resolving the defendant's direct appeal. (*Lewis*, at pp. 1137-1138; *Verdugo*, at pp. 329-330.)

The *Lewis* court reasoned: "Allowing the trial court to consider its file and the record of conviction is also sound policy. As a respected commentator has explained: 'It would be a gross misuse of judicial resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of the petition,

11

which frequently are erroneous, when even a cursory review of the court file would show as a matter of law that the petitioner is not eligible for relief. For example, if the petition contains sufficient summary allegations that would entitle the petitioner to relief, but a review of the court file shows the petitioner was convicted of murder without instruction or argument based on the felony murder rule or [the natural and probable consequences doctrine], . . . it would be entirely appropriate to summarily deny the petition based on petitioner's failure to establish even a prima facie basis of eligibility for resentencing.' (Couzens et al., Sentencing Cal. Crimes, [(The Rutter Group 2019)], ¶ 23:51(H)(1), pp. 23-150 to 23-151.)" (*Lewis*, *supra*, 43 Cal.App.5th at p. 1138.) We agree with this view and therefore conclude the court did not err by looking to the record of conviction and reviewing the attachments to the People's opposition (i.e., our opinion in Law's direct appeal or the jury instructions from his trial) in evaluating his petition.

### 2.     *The court properly denied Law's petition*

Next, Law argues that even if the trial court could look beyond his petition to the record of conviction, the evidence is insufficient to support a finding that he was a major participant who acted with reckless indifference to human life under *Banks* and *Clark*. The People argue that Law falls squarely into the definition of a major participant who acted with reckless indifference to human life. Because Law was convicted before *Banks* and *Clark*, he is correct that he is entitled to a determination of whether the trial evidence is sufficient to support the section 190.2 special circumstances finding under the

12

principles articulated in those cases. However, we agree with the People that the answer to that inquiry is yes.[3]

Whether there is sufficient evidence that Law was a major participant in the robbery who acted with reckless indifference to human life is a question we can decide on appeal. "A [d]efendant's claim that the evidence presented against him failed to support [a] robbery-murder special circumstance [finding made prior to *Banks* and *Clark*] . . . is not a 'routine' claim of insufficient evidence." (*In re Miller* (2017) 14 Cal.App.5th 960, 979-980.) The "claim does not require resolution of disputed facts; the facts are a given." (*Id.* at p. 980.)

Section 190.2 sets forth the special circumstances under which murderers and accomplices can by punished by death or life without possibility of parole. One such circumstance is when a defendant is found guilty of first degree murder committed while they were engaged in, or were an accomplice in, the commission or attempted commission of a robbery. (§ 190.2, subd. (a)(17)(A).) However, as explained above, a death resulting during the commission of a robbery (or any other felony enumerated in § 189) is insufficient, on its own, to establish a felony-murder special circumstance for those defendants, like Law, who were not determined to be the actual killer. Such defendants can only be guilty of special circumstance felony-murder if they aid in the

---

[3] The fact we previously summarily denied Law's habeas petition arguing the evidence was insufficient to support the special circumstances finding under *Banks* and *Clark* is irrelevant. "[T]he summary denial of a habeas corpus petition does not establish law of the case and does not have a res judicata effect in future proceedings." (*Gomez v. Superior Court* (2012) 54 Cal.4th 293, 305, fn. 6.)

murder with the intent to kill (§ 190.2, subd. (c)), or, lacking intent to kill, aid in the felony "with reckless indifference to human life and as a major participant." (*Id.*, subd. (d).)

Section 190.2, subdivision (d) was enacted in 1990 to bring state law into conformity with prevailing Eighth Amendment doctrine, as set out in the United States Supreme Court's decision *Tison v. Arizona* (1987) 481 U.S. 137. (*Banks*, *supra*, 61 Cal.4th at p. 798.) "In *Tison*, two brothers aided an escape by bringing guns into a prison and arming two murderers, one of whom they knew had killed in the course of a previous escape attempt. After the breakout, one of the brothers flagged down a passing car, and both fully participated in kidnapping and robbing the vehicle's occupants. Both then stood by and watched as those people were killed. The brothers made no attempt to assist the victims before, during, or after the shooting, but instead chose to assist the killers in their continuing criminal endeavors. [Citation.] The Supreme Court held the brothers could be sentenced to death despite the fact they had not actually committed the killings themselves or intended to kill, stating: '[R]eckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result. [¶] The [brothers'] own personal involvement in the crimes was not minor, but rather, . . . "substantial." Far from merely sitting in a car away from the actual scene of the murders acting as the getaway driver to a robbery, each . . . was

14

actively involved in every element of the kidnap[p]ing-robbery and was physically present during the entire sequence of criminal activity culminating in the murder[s] . . . and the subsequent flight. The Tisons' high level of participation in these crimes . . . implicates them in the resulting deaths.'" (*In re Ramirez* (2019) 32 Cal.App.5th 384, 393-394 (*Ramirez*), quoting *Tison*, at pp. 157-158.)

"The *Tison* court pointed to the defendant in *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*) as an example of a nonkiller convicted of murder under the felony-murder rule for whom the death penalty was unconstitutionally disproportionate. Enmund was the driver of the getaway car in an armed robbery of a dwelling whose occupants were killed by Enmund's accomplices when they resisted. [Citation.] In deciding the Eighth Amendment to the United States Constitution forbids imposition of the death penalty 'on one such as Enmund' . . . , the high court emphasized that the focus had to be on the culpability of Enmund himself, and not on those who committed the robbery and shot the victims [citation]. 'Enmund himself did not kill or attempt to kill; and, . . . the record . . . does not warrant a finding that Enmund had any intention of participating in or facilitating a murder. . . . [T]hus his culpability is plainly different from that of the robbers who killed; yet the State treated them alike and attributed to Enmund the culpability of those who killed the [victims]. This was impermissible under the Eighth Amendment.'" (*Ramirez*, *supra*, 32 Cal.App.5th at p. 394.)

In *Banks*, the California Supreme Court described what is often referred to as the *Tison-Enmund* spectrum. "At one extreme" are people like Enmund—"the minor actor in

15

an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state." (*Banks*, *supra*, 61 Cal.4th at p. 800.) "At the other extreme [are] actual killers and those who attempted or intended to kill." (*Ibid.*) Section 190.2, subdivision (d) covers those people who fall "into neither of these neat categories"—people like the Tison brothers, who were major participants in the underlying felony and acted with a reckless indifference to human life. (*Ibid.*)

Our high court articulated several factors intended to aid in determining whether a defendant falls into this middle category, such that section 190.2, subdivision (d) would apply to them. "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or *using* lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant *present at the scene* of the killing, in a position to facilitate or *prevent* the actual murder, and did his or her own actions or *inaction* play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, italics added.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*)

The defendant in *Banks* was convicted of first degree murder with a felony-murder special circumstance based on his having acted as the getaway driver for an armed robbery in which his codefendant Banks and others participated, and in which Banks shot and killed one of the robbery victims while escaping. (*Banks*, *supra*, 61 Cal.4th at p.796-

16

797.) Considering the defendant's involvement in the robbery against the factors just enumerated, the Court "placed [him] at the *Enmund* pole of the *Tison-Enmund* spectrum." (*Ramirez*, *supra*, 32 Cal.App.5th at p. 397.) As a result, the Court concluded "the jury's special-circumstance true finding cannot stand." (*Banks*, at p. 811.)

Not long after *Banks*, the Court revisited this issue in *Clark*, also concluding the evidence was insufficient to support the defendant's robbery-murder special circumstance findings. (*Clark*, *supra*, 63 Cal.4th at p. 611.) The defendant in Clark *planned* a burglary of a computer store to occur after the store was closed. According to the plan, his codefendant was to carry out the burglary and carry an unloaded gun. However, his codefendant ended up carrying a gun loaded with one bullet and fired that bullet when he unexpectedly encountered a store employee, killing her. (*Id.* at pp. 612-613.) Our high court concluded there was insufficient evidence Clark acted with reckless indifference to human life because (a) Clark was not physically present when his codefendant killed the employee and was therefore unable to intervene; (b) there was no evidence Clark knew his codefendant was predisposed to be violent; and (c) Clark planned for the robbery to take place after the store closed, and the gun was not supposed to be loaded. (*Id.* at pp. 619-622.) In sum, the court believed there was "nothing in [Clark's] plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery." (*Id.* at p. 623.)

Law argues his case is like *Banks* because there was no evidence he or May intended to kill the victim, "[r]ather, like in *Banks*, the killing here appeared to be a

17

spontaneous response to unexpected resistance from the victim." But the Court's conclusion *Banks* was not a major participant who acted with reckless indifference to human life did not focus on the spontaneity of the shooting. Instead, what the Court found significant was the defendant's role as the getaway driver who was not aware his codefendants were going to use guns during the robbery. Because he "did not see the shooting happen, did not have reason to know it was going to happen, and could not do anything to stop the shooting or render assistance," the Court concluded he was not "willingly involved in the violent manner in which the particular offense [was] committed." (*Banks*, *supra*, 61 Cal.4th at pp. 801, 803, fn. 5, 807.)

Law, in contrast, was willingly involved in the violent manner in which his and May's robbery took place. He and May not only broke into the victim's house armed, but they used the guns to threaten the victim and his roommates throughout the duration of the robbery. Even if we gave Law the benefit of the doubt and assumed he was the "first defendant" in the evidence the jury heard, he still watched without intervening when his accomplice pistol whipped the victim once and tried to do it again. Being at the scene of the shooting, he could have tried to stop his accomplice's violent behavior or to help the victim once he had been shot, but he did neither. We agree with the People that this sort of conduct easily meets our state's standard for what constitutes being a major participant who acted with reckless indifference to human life. Indeed, we are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun, and was present for the shooting did not meet the standard in section 190.2, subdivision (d).

18

The defendants who have been able to get their special circumstance findings vacated under *Banks* and *Clark* are those who were not wielding guns themselves and also not present for the shooting (either because they were acting as getaway drivers or because they were involved in the planning of the crime only). Law's conduct is clearly distinguishable.

Although the trial court erred by concluding the special circumstance finding, on its own, rendered Law ineligible for relief—that is, the court erred by failing to determine whether Law qualified as a major participant who acted with reckless indifference to human life under *Banks* and *Clark*—we conclude the error was harmless because the record demonstrates the answer to that question is yes. As a result, we conclude the denial of Law's petition was proper. (See *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419 [concluding that because "[t]he language of the special circumstance tracks the language of Senate Bill 1437 and the new felony-murder statutes," a jury's true finding on § 190.2, subd. (d) renders a § 1170.95 petitioner ineligible for relief].)

          3.     *Any error in failing to appoint counsel for Law was harmless beyond a reasonable doubt*

Law also argues the court erred by not appointing him counsel to aid in the court's determination of whether it should issue an order to show cause and hold an evidentiary hearing. We need not address this issue because even if it were error for the court not to appoint counsel at that stage in the petitioning process, the error was harmless. Given the trial evidence, counsel would not have been able to demonstrate in a reply brief or

19

otherwise that Law was not a major participant who acted with reckless indifference to human life.

## III

## DISPOSITION

We affirm the order denying Law's petition.


SLOUGH
                                                                                                J.

We concur:


RAMIREZ
                        P. J.


MENETREZ
                        J.

20

CERTIFIED FOR PUBLICATION


COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO



| | |
|---|---|
| THE PEOPLE, | E072845 |
|    Plaintiff and Respondent, | |
|   v. | (Super.Ct.No. RIF100589) |
| TERRELL LAW, | |
|    Defendant and Appellant. | The County of Riverside |
| | |
| | ORDER GRANTING<br>PUBLICATION |

THE COURT

     The request for publication of the opinion filed on April 27, 2020 is GRANTED. The opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c). It is ORDERED that the opinion filed in this matter on April 27, 2020, be certified for publication.


                                SLOUGH_____
                                             J.

We concur:


RAMIREZ_____
          P. J.


MENETREZ_____
        J.

1