Filed 4/22/21  P. v. Carramusa CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. CHRISTOPHER CARRAMUSA, Defendant and Appellant. | D076632 (Super. Ct. No. SCD270824) |


APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Reversed and remanded with directions.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

Christopher Carramusa pled guilty to one count of first degree burglary (Pen. Code, § 459),[1] and admitted a prior strike under the Three Strikes law (§§ 667, subd. (b)-(i), 668, 1170.12), a prior serious felony (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and four prison priors (§§ 667.5, subd. (b), 668).  The plea agreement left the determination of Carramusa's sentence to the discretion of the trial court.  The trial court declined to strike Carramusa's prior strike, and it sentenced Carramusa to an upper-term sentence of 17 years in prison.

On March 5, 2019, we issued an opinion in Carramusa's first appeal in this matter.  (*People v. Carramusa* (Mar. 5, 2019, D073484).)  Due to the post-sentencing change in law enacted by Senate Bill No. 1393 (Stats. 2018, ch. 1013, §§ 1-2), we remanded to the trial court to decide whether to exercise its discretion to strike the five-year enhancement for Carramusa's prior serious felony (§ 667, subd. (a)(1)).

On the same day, we issued an order summarily denying Carramusa's petition for writ of habeas corpus, which alleged ineffective assistance of counsel.  (*In re Carramusa* (Mar. 5, 2019, D074746).)  Carramusa premised his habeas petition on the fact that between the date of Carramusa's guilty plea on December 12, 2017, and his sentencing on January 23, 2018, our Supreme Court decided *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*).  The habeas petition argued that defense counsel should have advised Carramusa to withdraw his guilty plea because, under *Gallardo*, the People would no longer be able to prove that Carramusa incurred a prior strike and a prior serious felony.  Both the prior strike and prior serious felony were

---

[1]    All further statutory references are to the Penal Code unless otherwise noted.

2

based on Carramusa's guilty plea, in 1994, to the offense of battery with serious bodily injury. (§ 243, subd. (d).)

Our order summarily denying the habeas petition set forth two grounds for our conclusion that Carramusa had not made a prima facie case for relief. First, we observed that the habeas petition was not ripe because, on remand from Carramusa's appeal, defense counsel "may, before judgment, attempt to take further action with respect to Carramusa's plea." Second, we stated that, as we interpreted *Gallardo*, even if defense counsel had sought to withdraw Carramusa's guilty plea so that the People would be required to prove the strike and the serious felony, the People would have been able to prove those enhancements by relying on the preliminary hearing transcript from Carramusa's 1994 battery prosecution.[2] We premised our conclusion on the documents presented by the People at the sentencing hearing, which we described as showing that "Carramusa's guilty plea for the 1994 battery conviction expressly incorporated the preliminary hearing transcript."

On remand, the trial court made two rulings. First, it denied Carramusa's request, pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), to substitute appointed counsel. Second, it declined to exercise its discretion to strike the five-year enhancement for Carramusa's prior serious felony. During the proceedings on remand, defense counsel did not attempt to withdraw Carramusa's guilty plea.

In this appeal, Carramusa makes two arguments. First, Carramusa contends that defense counsel was ineffective because, on remand, he did not advise Carramusa to bring a motion to withdraw his guilty plea in light of

---

[2]     Carramusa requests that we take judicial notice of the habeas petition filed in case No. D074746, as well as our March 5, 2019 summary denial of that petition. We grant the request. (Evid. Code, § 452, subd. (d).)

3

*Gallardo*, which, if granted, would have required the People to prove that Carramusa's 1994 battery conviction qualified as a strike and prior serious felony. Second, Carramusa argues that during the *Marsden* hearing, the trial court improperly denied his request to substitute appointed counsel.[3]

We conclude that because the record shows that in conducting the *Marsden* hearing, the trial court was not aware of the items that Carramusa was attempting to rely upon to support his request for substitute appointed counsel, Carramusa did not receive a full and adequate *Marsden* hearing. Accordingly, we reverse the judgment and remand for a renewed *Marsden* hearing. Following the renewed *Marsden* hearing, and regardless of its outcome, Carramusa may file a motion to withdraw his guilty plea if he chooses to do so. If no such motion is filed, or if the motion is denied, the trial court shall reinstate the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Carramusa's Guilty Plea and Sentencing*

According to the probation officer's report, a house was burglarized during the afternoon of November 29, 2016, and over $80,000 in jewelry was taken.[4] Police eventually identified Carramusa as a suspect based on security camera footage and telephone records.

---

[3] Carramusa has also filed a petition for a writ of habeas corpus (Case No. D077952), in which he argues that defense counsel was ineffective for failing to advise him to withdraw his guilty plea in light of *Gallardo*. Simultaneously with this opinion, we are issuing an order denying the habeas petition on the ground that it is not ripe in light of our disposition of this appeal.

[4] Because Carramusa pled guilty, we based our recitation of the facts on the probation officer's report.

4

An amended information charged Carramusa with one count of first degree burglary of an inhabited dwelling. (§§ 459, 460, subd. (a).) The information also alleged that Carramusa incurred numerous probation-denial prior felony convictions (§ 1203, subd. (e)(4)), four prior prison terms (§§ 667.5, subd. (b), 668), a prior serious felony (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and a prior strike (§§ 667, subds. (b)-(i), 668, 1170.12).

On December 12, 2017, Carramusa pled guilty and made admissions to everything that was alleged in the amended information: burglary of an inhabited dwelling, the probation-denial prior felony convictions (§ 1203, subd. (e)(4)), four prior prison terms (§§ 667.5, subd. (b), 668), a prior serious felony (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and a prior strike (§§ 667, subds. (b)-(i), 668, 1170.12). The plea agreement contained no deal regarding Carramusa's sentence.

According to the amended information, both the prior strike and the prior serious felony were based on Carramusa's 1994 conviction for battery with serious bodily injury. (§ 243, subd. (d).) At the sentencing hearing, the trial court expressed concern over whether there was a factual basis for Carramusa's admission that he incurred a prior strike and prior serious felony. The trial court's concern arose because Carramusa's 1994 conviction for battery with serious bodily injury would qualify as a strike and serious felony only if it was a "felony in which the defendant personally inflict[ed] great bodily injury on any person, other than an accomplice." (§ 1192.7, subd. (c)(8).)[5] Thus, a conviction for battery with serious bodily injury would

---

[5] A strike under the Three Strikes law includes a defendant's conviction for a "serious felony" as that term is defined in section 1192.7, subdivision (c). (§ 667, subd. (d)(1).) The same definition of "serious felony" is used to determine whether a defendant has incurred a prior serious felony for the

5

only qualify as a "serious felony" for the purpose of the Three Strikes law or the five-year enhancement in section 667, subdivision (a)(1), if it was "personally inflicted" by Carramusa and the victim was not an accomplice.[6]

The prosecutor addressed the trial court's concerns by presenting documentation from the 1994 battery prosecution and giving the following explanation:

> "The last time that we appeared for the originally scheduled sentencing date Your Honor expressed some concern about the nature of Mr. Carramusa's 1994 conviction. As a result I contacted the Riverside County records department.

---

purpose of the five-year enhancement in section 667, subdivision (a)(1). (§ 667, subd. (a)(4).) As relevant here, section 1192.7, subdivision (c)(8) defines a serious felony as "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice."

Battery is defined as "any willful and unlawful use of force or violence upon the person of another" (§ 242), and section 243, subdivision (d) sets forth the punishment that applies when "a battery is committed against any person and serious bodily injury is inflicted on the person." (§ 243, subd. (d).) As it is possible to be convicted of battery on a theory of aiding and abetting (§ 31), and because it is possible to commit battery on an accomplice, a person could be convicted of battery with serious bodily injury without being convicted of a "felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice." (§ 1192.7, subd. (c)(8).)

[6] In arguing that counsel was ineffective, Carramusa has not expressly raised the issue of whether a conviction for a battery causing "serious bodily injury" is sufficient to establish a prior conviction in which the defendant inflicted "great bodily injury" as that term is used in section 1192.7, subdivision (c)(8). We therefore need not, and do not, consider the issue. (See *People v. Santana* (2013) 56 Cal.4th 999, 1008-1009 ["We recognize that the terms 'serious bodily injury' and 'great bodily injury' have been described as ' " "essential[ly] equivalent" " ' . . . and as having 'substantially the same meaning' . . . However, the terms in fact 'have separate and distinct statutory definitions.' . . . This distinction may make a difference when evaluating jury instructions that provide different definitions for the two terms," citations omitted].)

Unfortunately much of the original record had been purged in light of the age of the conviction; however, they were able to provide a certified copy of the minute order from the time of Mr. Carramusa's original plea in 1994. That is now marked as court's Exhibit One. On page five of that document it specifically states that he pled to a violation of Penal Code section 243(d) and that the factual basis was based on the preliminary hearing transcript. After speaking with the Riverside County DA's office they were able to locate a certified copy of the original preliminary hearing transcript. I provided that for defense counsel, and I am now admitting it as court's Exhibit Two. Based on our review of the transcript, the transcript does clearly establish that Mr. Carramusa personally inflicted great bodily injury, not on an accomplice, but rather on another and, therefore, it does constitute a strike. I will be admitting both of those as court's Exhibits One and Two."[7]

On January 23, 2018, the trial court denied Carramusa's motion to strike his prior strike, and it sentenced Carramusa to a prison term of 17 years. The 17-year term was based on the upper term of six years for the burglary, doubled to 12 years based on Carramusa's prior strike, plus five years for the prior serious felony. The trial court exercised its discretion to strike the four one-year enhancements for Carramusa's prior prison terms.

B. *Carramusa's First Appeal and Habeas Petition*

Carramusa appealed from the judgment. He argued that the trial court abused its discretion in declining to strike his prior strike and that, due to a change in the law after he was sentenced (Sen. Bill No. 1393, Stats. 2018,

---

[7] We have reviewed both of the exhibits presented by the prosecutor. The exhibits contain neither Carramusa's written plea agreement for the 1994 conviction nor the transcript from the 1994 plea hearing. The prosecutor's representation that "the factual basis was based on the preliminary hearing," is premised on court minutes from 1994 stating "Counsel stipulate: FACTUAL BASIS TAKEN FROM PRELIM HRG TRANSCRIPT."

ch. 1013, §§ 1-2), we should remand this matter for the trial court to decide whether to exercise its discretion to strike the five-year enhancement for Carramusa's prior serious felony. We reversed the judgment for the purpose of remanding to the trial court with directions that it decide whether to exercise its discretion to strike the five-year enhancement for Carramusa's prior serious felony conviction. (*People v. Carramusa* (Mar. 5, 2019, D073484).)

On the same day that we issued our opinion on Carramusa's appeal, we also issued an order summarily denying Carramusa's petition for habeas corpus. (*In re Carramusa* (Mar. 5, 2019, D074746).) Carramusa's habeas petition argued that defense counsel, Deputy Public Defender Warren Den, had provided ineffective assistance because he did not advise Carramusa to withdraw his guilty plea prior to sentencing based on our Supreme Court's opinion in *Gallardo*, *supra*, 4 Cal.5th 120.

*Gallardo* was issued nine days after Carramusa's guilty plea. In *Gallardo* our Supreme Court significantly limited the materials that a trial court could consult in determining the nature of a prior conviction consistent with the Sixth Amendment to the United States Constitution, as interpreted in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490. As *Gallardo* explained, "we now hold that a court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the 'nature or basis' of the prior conviction based on its independent conclusions about what facts or conduct 'realistically' supported the conviction. [Citation.] That inquiry invades the jury's province by permitting the court to make disputed findings about 'what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.' [Citation.] The court's role is, rather, limited to identifying those facts that were established by

8

virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) Thus, had the trial court been required to apply *Gallardo* when deciding whether Carramusa's 1994 battery conviction qualified as a serious felony, it would have been limited to the "facts . . . [Carramusa] admitted as the factual basis for [the 1994] guilty plea." (*Ibid.*)

In his habeas petition, Carramusa argued that the documentation relating to his 1994 conviction that the trial court referenced at the December 12, 2017 plea hearing did not satisfy the strict requirements of *Gallardo* because Carramusa, in 1994, did not admit the facts that made the battery a serious felony, namely that he personally inflicted great bodily injury and the victim was not an accomplice. Based on that premise, the habeas petition argued that "[r]easonable counsel would have moved to withdraw petitioner's admission that his prior conviction for battery was a serious felony after the California Supreme Court issued *Gallardo*, 4 Cal.5th 120." As the petition argued, "trial counsel did not . . . explain to [Carramusa] he could move to withdraw his admission based on *Gallardo* at sentencing. . . . At petitioner's sentencing hearing, trial counsel neither brought *Gallardo* to the trial court's attention nor moved to withdraw petitioner's admission. . . . As such, trial counsel's assistance was ineffective and subjected appellant to an enhanced sentence no longer valid at law." As the petition pointed out, "Had trial counsel moved to withdraw petitioner's admission and the trial court properly found the facts petitioner necessarily admitted in 1994 fall short of establishing his battery was serious, the strictest sentence petitioner could have received for this case would have been 10 years (i.e., the upper term of six years for first degree burglary plus an additional year for each of

9

appellant's prison priors), which is a significantly lower sentence than 17 plus years he received below."[8]

Our order summarily denying Carramusa's habeas petition set forth two grounds for the denial. First, we observed that because a motion to withdraw a guilty plea may be made at any time before judgment (§ 1018), "the habeas corpus petition alleging ineffective assistance of counsel is not yet ripe, as defense counsel may, before judgment, attempt to take further action with respect to Carramusa's plea." Second, we explained that Carramusa had not established a prima facie case for relief because it appeared that even under *Gallardo*, the trial court would be able to refer to the 1994 preliminary hearing transcript to determine the factual basis for the 1994 battery conviction. In so doing, we characterized *Gallardo* as holding that "when the prior conviction at issue involved a guilty plea in which the defendant expressly incorporated the preliminary hearing transcript as the factual basis for the guilty plea, the trial court was permitted to look to that

---

[8] We note the Legislature amended section 667.5, subdivision (b), effective January 1, 2020, to restrict the category of offenses that give rise to a one-year enhancement for a prior prison term. (Stats. 2019, ch. 590, § 1.) Thus, under current law, Carramusa is eligible for a one-year enhancement only if the prior prison term was based on a "sexually violent offense." (§ 667.5, subd. (b).) In light of Carramusa's criminal history, as identified in the amended information and the probation officer's report, it appears that only one of Carramusa's four prison priors (from a 2001 conviction for violations of §§ 288a, subd. (b)(2) and 288, subd. (c)(1)) may have been based on a sexually violent offense. (§§ 667.5, subd. (b), 6600, subd. (b).) Accordingly, if Carramusa was granted leave to withdraw his guilty plea and the People were unable to prove that the 1994 battery conviction was a prior strike and a prior serious felony, Carramusa would be eligible for a total prison sentence of no more than seven years. That seven-year sentence would be based on a six-year upper-term sentence for the burglary conviction and a one-year enhancement for the 2001 prison prior.

preliminary hearing transcript to establish the nature of the conviction." Next, we stated that "according to documents contained in the record and submitted to the trial court, Carramusa's guilty plea for the 1994 battery conviction expressly incorporated the preliminary hearing transcript." We therefore concluded that "under *Gallardo*, if the People were required to prove that the 1994 battery conviction was a 'felony in which the defendant personally inflict[ed] great bodily injury on any person, other than an accomplice' (§ 1192.7, subd. (c)(8)), they would be able to do so based on the preliminary hearing transcript, which shows that Carramusa personally inflicted the injury and that the victim was not an accomplice."[9]

C. *Proceedings After Remand*

On March 11, 2019, following our opinion remanding this matter to the superior court, the same deputy public defender, Mr. Den, was reappointed as counsel for Carramusa.

Shortly thereafter, Carramusa sent correspondence to the trial court, in which he asked for substitute appointed counsel. Specifically, Carramusa sent two letters, both of which are dated March 31, 2019, and were file-stamped by the superior court on May 14, 2019.

One of the letters is handwritten. The other is typewritten. The typewritten letter reproduces some, but not all, of the content of the handwritten letter.[10] The handwritten letter states as follows:

---

[9]	Carramusa's appellate counsel served Mr. Den with Carramusa's habeas petition when it was filed in 2018. However, this court did not serve Mr. Den with the March 5, 2019 order summarily denying the habeas petition.

[10]	Carramusa's typewritten letter set forth the following grounds for conflict with defense counsel: "1. Warren Den failed to withdraw my plea of

11

"I would like to respectfully request that the Court assign me new counsel due to a serious conflict with my counsel of record (Mr. Den).

"The conflict reasons being:

"1) Mr. Den failed to withdraw my plea of 'guilty' after it was decided that this Court would not accept the plea deal offered to me by the prosecutor of record, and again after the Calif. Supr. Court issued a decision on Peo. v. G[*] (2017) 4 Cal.5th 120.

"2) Because Mr. Den failed to cooperated [*sic*] with my appeal attorney . . . after successive attempts on her part (calls, letters and emails) to contact him.  Under Calif. Bar rule requiring cooperation:  State Bar Formal Opinion # 1992-127.

"I would like to thank the court for its consideration of this matter and would respectfully request a ruling on this issue prior to my appearance before the Court for Appeal Opinion #D073484, so that I may confer with said counsel."[11]

The trial court received our remittitur on May 9, 2019, and held a hearing on May 21, 2019, at which Carramusa was not present.  The minute order from that hearing indicates that an order to produce Carramusa from prison would be issued, and it stated "[d]efendant's request for new counsel to be addressed at [the] next hearing."

---

guilty after it was decided that this court would not accept the plea deal offered to me by the Prosecutor of record.  [¶]  2. Mr. Den failed to cooperate with my appeal attorney . . . after numerous attempts on her part (calls, letters and emails) all ignored."

[11]    The bracketed asterisk in the letter indicates where the text appears to have been cut off at the margin when the letter was copied.  Based on the case citation provided, there is no doubt that the letter refers to *People v. Gallardo* (2017) 4 Cal.5th 120.

At the next hearing on July 9, 2019, the trial court conducted a *Marsden* hearing with Carramusa and Mr. Den in attendance. The trial court began the *Marsden* hearing by asking Carramusa to state "what you think has gone wrong between you and your attorney that makes you think he can't properly represent you." The trial court advised Carramusa, however, that even if counsel "may not have a bedside manner that you like," that "[d]oesn't mean that they're incompetent." The following discussion then took place:

> "[CARRAMUSA]: I don't think he's incompetent, sir. It was just my appellate attorney advised me to ask him to step down because he didn't call her back via e-mail. Any letters that she sent to him, he never responded to. So she said that if I could get new counsel because he was—if he didn't do his job. This is the reasons that she gave me because I just didn't know right offhand.

> "THE COURT: Thanks. Okay. Yes, I have read the Court of Appeal briefs. I don't remember what they said, but I do remember it was the actual decision by the Court of Appeal. All right.

> "[CARRAMUSA]: I couldn't remember completely either. On top of it, I'm already nervous as it is. It's hard to speak by itself.

> "THE COURT: I take it your main complaint against your attorney here is that when this case went up on appeal, he didn't properly communicate with your appellate attorney; is that right?

> "[CARRAMUSA]: Yes, Your Honor.

> "THE COURT: Okay. I'm just wondering two things[.] Number one, how that would have affected [appellate counsel]. Do you have anything from her saying that she thinks that because Mr. Den didn't communicate with her, that caused a problem with the Court of Appeal?

13

"[CARRAMUSA]: It was—I think it's right there. There's a letter from my wife that the deputies handed to you. That was the reason being why she suggested for me to seek new counsel.

"THE COURT: Very good. Let me hear from counsel and see if you know anything about this."[12]

When the trial court turned to Mr. Den for comment, Mr. Den's comments indicate that he believed Carramusa was dissatisfied with him because he did not receive any leniency from the trial court during sentencing, even though Carramusa pled guilty and admitted all of the allegations in the amended information. Mr. Den explained, "due to the outcome of the case, it did affect me professionally and personally. I had to sort of step back and sort of wonder and question my own professional judgment in how the ultimate outcome of the case was." Mr. Den stated, "I did speak with Mr. Carramusa yesterday, and I explained to him what—how I was feeling after the sentencing date. And I explained to him, and I also apologized to him."

The trial court stated, "You know, I've read over the Court of Appeal opinion which was unpublished which sustained the conviction and the sentence. I didn't see anything in there that indicated to me that there was even a hint of incompetence of counsel. I know it's difficult for everyone to judge their own case. Did you see anything in that opinion, or do you know

---

[12]    Appellate counsel made a request to augment the appellate record with the "letter that is referred to in the *Marsden* transcript" "detailing the reasons why new counsel should be appointed." We granted the motion to augment, directing the superior court to transmit "the letter referenced during the hearing held pursuant to *People v. Marsden* (1970) 2 Cal.3d 118." No such letter was transmitted from the superior court. We accordingly infer that no such document is contained in the superior court file.

14

anything that would lead you to think the Court of Appeal was thinking along those lines?" Mr. Den did not bring the allegation of ineffective assistance of counsel in the habeas petition to the trial court's attention. Instead, he replied, "Anytime the attorney gets it wrong, that's always time for a reflection and contemplation about your own practice, but I did the best that I could at the time."

The trial court and Mr. Den then held the following discussion, based on their assumption that Carramusa's dissatisfaction with Mr. Den's representation was based on the fact that Carramusa received a lengthier sentence than he expected when he entered his guilty plea:

> "THE COURT: Yeah. I think one of the big issues here was the prosecutor thought this was an 11-year case.
>
> "MR. DEN: Correct.
>
> "THE COURT: After I looked at everything, even though it was a plea, and I give great consideration to an early plea, I made it 17 years.
>
> "MR. DEN: Usually when I do get it wrong, I really am not wrong by that kind of amount. So it was surprising to me, but obviously I respect the Court's decision.
>
> "THE COURT: Even if it's wrong, I made it."

Carramusa interjected to explain that when he entered his guilty plea, he understood based on a "miscommunication" with Mr. Den that he was "signing for 11, no more than 11," that is, a total sentence of no more than 11 years. Carramusa stated, "When that hit us the way it did, it was a big blow. I didn't really understand it. So at the time they put the appeal in and everything, I was just hoping to God I could come back and do the best I can with whatever."

The trial court then explained that after reviewing the plea agreement and the transcript from the sentencing hearing, it was satisfied "that I made it clear there was no promise to you that I was thinking along certain lines. I know that there was just no promise." The trial court denied Carramusa's *Marsden* motion with the following statement: "Mr. Carramusa, I'm going to deny the *Marsden*. I think your attorney has done a good job in representing you both at the sentencing, and the Court of Appeal decision indicates to me that there was nothing that he did that in any way injured you at the Court of Appeal. The fact that maybe he didn't communicate as well as he should have with the Court of Appeal attorney, I don't think that's all that important. The reasons why they're not all that important is when a case goes up on appeal, you just look at a written record. The thoughts and processes aren't part of the Court of Appeal."

Immediately after denying the *Marsden* motion, the trial court opened the courtroom to the public and proceeded to consider whether to exercise its discretion to strike the five-year enhancement for Carramusa's prior serious felony. (§ 667, subd. (a)(1).) Mr. Den made no mention of a possible motion to withdraw Carramusa's guilty plea to take advantage of the standards for proving a prior conviction now set forth in *Gallardo*. The trial court declined to exercise its discretion to strike the five-year enhancement for Carramusa's prior serious felony, and it reinstated Carramusa's 17-year sentence.

After Mr. Den inadvertently failed to file a timely notice of appeal, we granted Carramusa's request for a constructive notice of appeal.

II.

DISCUSSION

Carramusa presents two arguments in this appeal. First, he contends that the trial court improperly denied his *Marsden* motion. Second, he contends that he received ineffective assistance of counsel because Mr. Den

16

did not attempt, on remand, to file a motion to withdraw Carramusa's guilty plea so that he could take advantage of the new requirements for establishing a prior conviction as set forth in *Gallardo*, *supra*, 4 Cal.5th 120. We turn first to the *Marsden* motion.

A.    *The Failure to Provide Carramusa With a Full and Adequate Marsden Hearing Requires Reversal*

      1.    *Applicable Legal Principles*

" 'When a defendant seeks substitution of appointed counsel pursuant to *People v. Marsden, supra,* 2 Cal.3d 118, "the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' [Citation.] 'A trial court should grant a defendant's *Marsden* motion only when the defendant has made "a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation." ' [Citation.] 'We review the denial of a *Marsden* motion for abuse of discretion.' " (*People v. Streeter* (2012) 54 Cal.4th 205, 230.) Further, as particularly relevant here, "[w]hen reviewing whether the trial court abused its discretion in denying a *Marsden* motion, we consider whether it made an adequate inquiry into the defendant's complaints." (*People v. Mungia* (2008) 44 Cal.4th 1101, 1128 (*Mungia*).)

The type of inquiry required in a *Marsden* hearing was first addressed in *Marsden* itself. There, the defendant sought a ruling on whether he was receiving competent representation. In considering the issue, the trial court did not allow the defendant to explain the basis for his dissatisfaction with counsel, even though the defendant asked that he be permitted to describe

17

specific instances. Instead, the trial court improperly denied relief based on the court's observation of counsel during the proceedings. (*Marsden, supra,* 2 Cal.3d at pp. 121-122.) In the course of explaining the type of inquiry that a trial court should conduct, our Supreme Court noted that a court should not "disregard[ ] the defendant's lay status and his admitted ignorance of the law. . . . The semantics employed by a lay person in asserting a constitutional right should not be given undue weight in determining the protection to be accorded that right." (*Id.* at p. 124.) *Marsden* also indicated that because a layperson's request for substitute counsel is involved, a trial court may attempt to assist a defendant in articulating the basis for the request. As *Marsden* noted, "although defendant was represented by counsel, he was groping for the proper manner in which to demonstrate the alleged lack of competence of his attorney, and the trial judge would have been well within the bounds of judicial propriety in giving any helpful suggestion which might have aided defendant in the presentation of his complaint." (*Id.* at p. 126.)

Following *Marsden*, our Supreme Court has on numerous occasions considered whether a trial court followed adequate procedures during a hearing at which a defendant sought to substitute appointed counsel. As one court has summarized the relevant authority, "*Marsden* and its progeny require that when a defendant complains about the adequacy of appointed counsel, the trial court permit the defendant to articulate his causes of dissatisfaction and, if any of them suggest ineffective assistance, to conduct an inquiry sufficient to ascertain whether counsel is in fact rendering effective assistance. [Citations.] If the defendant states facts sufficient to raise a question about counsel's effectiveness, the court must question

18

counsel as necessary to ascertain their veracity." (*People v. Eastman* (2007) 146 Cal.App.4th 688, 695.)

    2.    *Carramusa Did Not Receive a Full and Adequate Marsden Hearing*

In challenging the trial court's denial of his *Marsden* motion, Carramusa focuses on the outcome of the proceeding. Specifically, Carramusa contends that based on his handwritten letter and the arguments he presented in his habeas petition, the trial court could come to no other conclusion than that Carramusa had an irreconcilable conflict with Mr. Den due to the fact that Mr. Den declined to file a motion to withdraw Carramusa's guilty plea. As Carramusa explains, had Mr. Den successfully moved to withdraw the guilty plea, Carramusa could then require the People to prove his prior strike and prior serious felony under the standards set forth in *Gallardo, supra*, 4 Cal.5th 120.

Carramusa's argument is misdirected because it assumes that in ruling on the *Marsden* motion, the trial court had the opportunity to consider both (1) the content of Carramusa's handwritten letter; and (2) the existence of Carramusa's habeas petition. We find no indication in the record that the trial court was aware of or able to consider either of those items when it ruled on the *Marsden* motion.[13] Thus, we cannot conclude, as Carramusa

---

[13]    Indeed, in explaining to Carramusa that Mr. Den's failure to communicate with appellate counsel was unimportant because "[t]he thoughts and processes aren't part of the Court of Appeal," the trial court strongly suggested that it had no knowledge that Carramusa had also filed a habeas petition. The trial court would not have made such a statement had it known about the habeas petition because, in a habeas corpus proceeding, evidence about defense counsel's tactical reasons for taking a specific action can be submitted and may be relevant to the outcome. (See *People v. Wilson* (1992) 3 Cal.4th 926, 936 ["[A] claim of ineffective assistance is more

advocates, that the trial court was required to conclude, *based on the information it considered at the Marsden hearing*, that an irreconcilable conflict existed between Carramusa and Mr. Den.

However, that observation does not end our inquiry. An appellate court's review of a ruling denying a *Marsden* motion is not limited to examining whether the trial court reasonably concluded, based on the information presented, that defense counsel provided competent representation and that there was no irreconcilable conflict. We must also review "whether [the trial court] made an adequate inquiry into the defendant's complaints." (*Mungia, supra*, 44 Cal.4th at p. 1128.) Here, as we will explain, it appears that through no fault of its own, the trial court did not conduct a full and adequate inquiry into the grounds that Carramusa advanced for his request to substitute appointed counsel.

We turn to the transcript of the *Marsden* hearing for our analysis. The transcript shows that the trial court proceeded at the outset by asking Carramusa to explain the basis for his request to substitute appointed counsel. In responding, Carramusa immediately struggled to articulate the basis for his *Marsden* motion and indicated that he wanted to rely on the grounds that appellate counsel had identified for asking to substitute appointed counsel. Among other things, Carramusa stated that he "couldn't remember completely," that he was "nervous as it is," and that it was "hard to speak by itself."

---

appropriately made in a habeas corpus proceeding, in which the attorney has the opportunity to explain the reasons for his or her conduct. 'Having afforded the trial attorney an opportunity to explain, courts are in a position to intelligently evaluate whether counsel's acts or omissions were within the range of reasonable competence.' "].)

Carramusa sought to refer to a letter that he believed the bailiff had handed to the trial court, which Carramusa described as showing "the reason being why [appellate counsel] suggested for me to seek new counsel." However, no such letter is contained in the superior court file even though, at the end of the *Marsden* hearing, the trial court stated, "You did give me a letter. Did you want to have this as part of the court record here?" and Carramusa responded affirmatively. We infer from subsequent comments made at the hearing that Carramusa wrongly assumed that the letter the bailiff handed to the trial court described appellate counsel's reasons for recommending that Carramusa seek substitute appointed counsel. Instead, it appears that the bailiff handed the trial court a different letter. That letter was written by Carramusa to support his request that the trial court strike the five-year enhancement for the prior serious felony, and it expressed Carramusa's remorse for the burglary and his desire to make restitution to the victims. The letter is included in the appellate record and is file stamped July 9, 2019, the date of the *Marsden* hearing. As the letter does not describe appellate counsel's advice that Carramusa seek substitute counsel, it cannot be the letter that Carramusa believed the bailiff was handing to the trial court.

Although the trial court made a diligent attempt to understand the basis on which appellate counsel had advised Carramusa to seek substitute appointed counsel, and Carramusa did his best to try to explain the grounds that appellate counsel identified for him, a series of circumstances appear to have frustrated the ability of the trial court to fully understand the basis for Carramusa's request. First, as we have explained, it appears that Carramusa believed the bailiff was handing the trial court a letter explaining

21

appellate counsel's reasons for recommending that Carramusa seek substitute counsel, but the trial court did not receive that letter.

Second, the trial court does not appear to have been aware of Carramusa's handwritten letter dated March 31, 2019. Although the letter was filed on May 14, 2019, we see no indication in the record that the letter was part of the materials that the trial court reviewed during the July 9, 2019 *Marsden* hearing. If the trial court had consulted Carramusa's handwritten letter during the *Marsden* hearing, it could have asked follow-up questions to both Carramusa and Mr. Den to attempt to ascertain what Carramusa meant when he stated that he had a conflict with defense counsel because "Mr. Den failed to withdraw my plea of 'guilty' . . . after the Calif. Supr. Court issued a decision on Peo. v. G (2017) 4 Cal.5th 120." (See *People v. Miranda* (1987) 44 Cal.3d 57, 77 ["The failure to ask follow-up questions may make it more difficult for a trial court to thoughtfully exercise its discretion in a manner required by *Marsden*," and "[a]dditional questioning may assist the court in assessing the merit or lack thereof of a defendant's motion."].) The response to follow-up questions about the handwritten letter would likely have caused the trial court to understand that Carramusa's request for substitute counsel was, in part, based on Mr. Den's failure to advise Carramusa to bring a motion to withdraw his guilty plea after *Gallardo* was issued.

Finally, we see no indication in the record that the trial court was aware of either Carramusa's 2018 habeas petition or our order summarily denying that petition. The trial court made no mention of having reviewed any materials from the habeas corpus proceeding, and Mr. Den did not bring the habeas corpus proceeding to the trial court's attention, even when the trial court asked if Mr. Den perceived any "hint" of incompetent

22

representation in the materials filed in the Court of Appeal. Had the trial court been made aware of the basis for Carramusa's habeas petition, the trial court likely would have understood that Carramusa's request for substitute counsel was, in part, based on an alleged conflict with Mr. Den arising from Mr. Den's failure to file a motion to withdraw Carramusa's guilty plea in light of *Gallardo*. In addition, had the trial court known that Carramusa filed a habeas petition, it would have understood the significance of Carramusa's complaint that Mr. Den was ineffective by failing to communicate with appellate counsel.

In light of the three items that the trial court could have considered during the *Marsden* hearing, but did not, we conclude that Carramusa did not receive a full and adequate *Marsden* hearing. As in *Marsden*, Carramusa was a layperson "groping for the proper manner in which to demonstrate the alleged lack of competence of his attorney" (*Marsden, supra*, 2 Cal.3d at p. 126), and he should have been permitted to rely on his March 31, 2019 handwritten letter and statements from appellate counsel when seeking to articulate why he wanted a new attorney. The inadvertent omission of (1) the letter that Carramusa believed the bailiff was handing to the trial court; (2) Carramusa's handwritten letter which included the citation to *Gallardo*; and (3) any awareness of Carramusa's habeas petition, all combined to deprive Carramusa of his ability, as a layperson, to effectively explain the basis for his request for substitute counsel.

3. *The Lack of a Full and Adequate Marsden Hearing Was Prejudicial*

Having concluded that Carramusa did not obtain a full and adequate *Marsden* hearing, we must determine whether the error was prejudicial and requires reversal.

23

"*Marsden* does not establish a rule of per se reversible error. [Citations.] Where there is *Marsden* error, we must reverse, unless the record shows beyond a reasonable doubt that the defendant was not prejudiced." (*People v. Knight* (2015) 239 Cal.App.4th 1, 9.)

The People contend that any error arising from the *Marsden* hearing was harmless to the extent that Carramusa's *Marsden* motion was based on the argument that Mr. Den should have brought a motion to withdraw Carramusa's guilty plea. If Mr. Den had successfully moved to allow Carramusa to withdraw his guilty plea, Carramusa could have required the People to prove his prior strike and prior serious felony based on the standards set forth in *Gallardo, supra,* 4 Cal.5th 120. However, accordingly to the People, success on a motion to withdraw the plea ultimately would not have made any difference for Carramusa's sentence. The People point out that in our March 5, 2019 order summarily denying Carramusa's habeas petition, we stated that even under *Gallardo*, the People still will be able to prove Carramusa's prior strike and prior serious felony. Thus, as the People argue, even if they were put to their proof under *Gallardo* after Carramusa withdrew his plea, Carramusa would receive the same sentence.

Although we understand the People's argument, we reject it because it depends on the premise that our March 5, 2019 habeas order continues to govern this matter. "[T]he summary denial of a habeas corpus petition does not establish law of the case and does not have a res judicata effect in future proceedings." (*Gomez v. Superior Court* (2012) 54 Cal.4th 293, 305, fn. 6; see also *Kowis v. Howard* (1992) 3 Cal.4th 888, 895 ["A short statement or citation explaining the basis for the summary denial does not transform the denial into a decision of a cause entitled to law of the case effect."].) On

24

further review, we do not believe that our March 5, 2019 order should be the last word on how *Gallardo* applies in this matter.

Our March 5, 2019 order contained the following explanation as one of the two grounds for our denial of Carramusa's habeas petition:

"[E]ven if defense counsel had moved to withdraw Carramusa's guilty plea so as to require the People to prove that the 1994 battery conviction was a strike and a serious felony, the People could have relied on the preliminary hearing transcript from the 1994 proceeding under an exception set forth in *Gallardo*. Specifically, *Gallardo* indicated that when the prior conviction at issue involved a guilty plea in which the defendant expressly incorporated the preliminary hearing transcript as the factual basis for the guilty plea, the trial court was permitted to look to that preliminary hearing transcript to establish the nature of the conviction. (*Gallardo*, *supra*, 4 Cal.5th at p. 136 [the trial court improperly relied on a preliminary hearing transcript when '[n]othing in the record shows that defendant adopted the preliminary hearing testimony as supplying the factual basis for her guilty plea'].) Here, according to documents contained in the record and submitted to the trial court, Carramusa's guilty plea for the 1994 battery conviction expressly incorporated the preliminary hearing transcript. Accordingly, under *Gallardo*, if the People were required to prove that the 1994 battery conviction was a 'felony in which the defendant personally inflict[ed] great bodily injury on any person, other than an accomplice' (§ 1192.7, subd. (c)(8)), they would be able to do so based on the preliminary hearing transcript, which shows that Carramusa personally inflicted the injury and that the victim was not an accomplice."

We no longer endorse this analysis for two reasons.

First, we were inexact in characterizing the documentation from Carramusa's 1994 plea hearing. We stated that "according to documents contained in the record and submitted to the trial court, Carramusa's guilty plea for the 1994 battery conviction expressly incorporated the preliminary hearing transcript." We failed to highlight that the *only* documentation from

25

the 1994 plea hearing that the trial court had before it was a single minute order. The trial court did not review the transcript from the 1994 plea hearing or any other documentation, such as Carramusa's 1994 written plea agreement. The minute order itself says nothing about whether Carramusa personally made any factual admissions on the record or in his plea agreement. Instead, in describing the basis for the guilty plea, the minute order makes only a single statement. "Counsel stipulate: FACTUAL BASIS TAKEN FROM PRELIM HRG TRANSCRIPT."

The minute order's reference to *counsel's* stipulation is significant in that the trial court is "limited to identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that *the defendant admitted* as the factual basis for a guilty plea." (*Gallardo*, *supra*, 4 Cal.5th at p. 136, italics added.) *Gallardo* states that the *defendant* must make the admission. It is unclear from the minute order whether that occurred.[14]

We note that on December 12, 2017, when the People submitted the documentation from Carramusa's 1994 battery conviction, *Gallardo* had not yet issued. Under then-existing authority, the trial court was permitted to look to the preliminary hearing transcript from Carramusa's 1994 battery conviction to ascertain whether "the conviction realistically may have been based on conduct that would not constitute a serious felony under California law." (*People v. McGee* (2006) 38 Cal.4th 682, 706.) It is possible that, in

---

[14] This court has previously held that, under *Gallardo*, a trial court may consider specific factual admissions that a defendant makes on the record during a plea hearing. (*In re Scott* (2020) 49 Cal.App.5th 1003, 1019-1021, review granted Aug. 12, 2020, S262716.) Here, the record does not permit the type of inquiry conducted in *Scott* because the trial court was not presented with a transcript from Carramusa's 1994 plea hearing.

light of *Gallardo*, the People will be able to locate additional documentation from the plea hearing for the 1994 battery conviction. Therefore, it would be premature for us to opine on whether, if Carramusa was granted leave to withdraw his guilty plea, the People would be able to prove that Carramusa incurred a strike and a serious felony.

Second, our March 5, 2019 order characterized *Gallardo* as indicating "that when the prior conviction at issue involved a guilty plea in which the defendant expressly incorporated the preliminary hearing transcript as the factual basis for the guilty plea, the trial court was permitted to look to that preliminary hearing transcript to establish the nature of the conviction." We based this statement on *Gallardo*'s factual observation that "[n]othing in the record shows that defendant adopted the preliminary hearing testimony as supplying the factual basis for her guilty plea." (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) As we will explain, upon further review, we believe we overstated *Gallardo*'s holding.

In *Gallardo*, the issue was whether the trial court improperly relied on a preliminary hearing transcript to determine that the defendant used a deadly weapon in committing an assault. (*Gallardo*, *supra*, 4 Cal.5th at p. 123.) Our Supreme Court explained, "Defendant did not specify that she used a deadly weapon when entering her guilty plea. The trial court's sole basis for concluding that defendant used a deadly weapon was a transcript from a preliminary hearing at which the victim testified that defendant had used a knife during their altercation. Nothing in the record shows that defendant adopted the preliminary hearing testimony as supplying the factual basis for her guilty plea." (*Id*. at p. 136.) *Gallardo* concluded that it was improper for the trial court to have relied on the preliminary hearing transcript because "*at least in the absence of any pertinent admissions*, the

27

sentencing court can only guess at whether, by pleading guilty to a violation of Penal Code section 245, subd. (a)(1), defendant was also acknowledging the truth of the testimony [in the preliminary hearing transcript] indicating that she had committed the assault with a knife." (*Id.* at p. 137, italics added.)

Because the issue was not presented by the facts of the case, *Gallardo* did not address the circumstances under which a defendant's reference to a preliminary hearing transcript during a plea hearing will be sufficient to establish that the defendant admitted the facts testified to during the preliminary hearing. (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) *Gallardo* stated that "*in the absence of any pertinent admissions*" the trial court should not have relied on the preliminary hearing transcript (*id.* at p. 137, italics added), but it failed to describe *the type* of "pertinent admissions" that would be sufficient to allow the trial court to do so. In our view, the proper approach to that question remains open pending further guidance from our Supreme Court. Indeed, it is possible that the significance of a preliminary hearing transcript will depend, at least in part, on the specific statements that a defendant makes during a plea hearing or in a written plea agreement concerning the preliminary hearing transcript.

In sum, in light of (1) *Gallardo*'s requirements for proving a prior conviction, and (2) the limited documentation from the 1994 plea proceeding that the People have thus far located, we cannot conclude beyond a reasonable doubt that Carramusa would be unsuccessful in obtaining a more favorable outcome were we to remand to permit him to renew his *Marsden* motion to obtain substitute counsel. Accordingly, we will reverse the judgment and remand for a renewed *Marsden* hearing. Following the renewed *Marsden* hearing, and regardless of its outcome, Carramusa may file

a motion to withdraw his guilty plea if he chooses to do so.[15]  If no such motion is filed, or if the motion is denied, the trial court shall reinstate the judgment.[16]

B.    *The Issue of Whether Defense Counsel Was Ineffective Is Not Ripe for Review In Light of Our Disposition Remanding for a Renewed Marsden Hearing*

Carramusa's second contention on appeal is that he received ineffective assistance of counsel in violation of his constitutional rights.  (*Strickland v. Washington* (1984) 466 U.S. 668, 684-686; *People v. Doolin* (2009) 45 Cal.4th 390, 417.)  Specifically, Carramusa contends that Mr. Den should have advised him to withdraw his guilty plea in light of *Gallardo*.

Because we will reverse the judgment and remand for a renewed *Marsden* hearing, Carramusa's contention that the judgment should be reversed due to ineffective assistance from counsel is not yet ripe for review.

---

[15]    Section 1018 states in relevant part, "On application of the defendant at any time before judgment . . . the court may . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . .  This section shall be liberally construed to effect these objects and to promote justice."  (§ 1018.)

[16]    In *People v. Sanchez* (2011) 53 Cal.4th 80, 92-93, our Supreme Court approved the following disposition when it reversed the judgment based on the trial court's failure to hold a *Marsden* hearing for a defendant who wished to withdraw his plea:  " '(1) the court shall hold a hearing on [defendant]'s *Marsden* motion concerning his representation by the public defender's office; (2) if the court finds that [defendant] has shown that a failure to replace his appointed attorney would substantially impair his right to assistance of counsel, the court shall appoint new counsel to represent him and shall entertain such applications as newly appointed counsel may make; and (3) if newly appointed counsel makes no motions, any motions made are denied, or [defendant]'s *Marsden* motion is denied, the court shall reinstate the judgment.' "  In this case, our disposition differs somewhat in that Mr. Den may end up filing a motion on remand.

Further proceedings on remand may make the issue moot or may provide additional evidence concerning the nature of defense counsel's representation. We therefore do not, and need not, reach the issue of whether Mr. Den provided constitutionally ineffective assistance.

## DISPOSITION

The judgment is reversed, and the matter is remanded for a renewed *Marsden* hearing. Following the renewed *Marsden* hearing, and regardless of its outcome, Carramusa may file a motion to withdraw his guilty plea if he chooses to do so. If no such motion is filed, or if the motion is denied, the trial court shall reinstate the judgment.

IRION, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.